## Wytheville.

### HICKS v. COMMONWEALTH.

#### June 20th, 1889.

1. CRIMINAL PROCEEDINGS—*Attempt to poison—Indictment—Demurrer.*—An indictment for an attempt to administer poison under Code 1887, sec. 3699, that does not allege such acts as, in a legal sense, constitute an attempt to commit the offence charged, but only such as show preparation, is demurrable.
2. IDEM—*Criminal attempt.*—An attempt to commit a crime consists of (1) the intent; (2) a direct, ineffectual act towards its commission; and that act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation.
3. IDEM—*Case at bar.*—The evidence in this case shows only a procurement of the poison and an ineffectual solicitation of a third party to put it in the drink of the intended victim, which acts constitute not an attempt, but only a preparation.

Error to judgment of circuit court of Pulaski county, rendered March 26, 1889, affirming a judgment of county court of said county, rendered February 13, 1889, whereby George W. Hicks, the plaintiff in error, was sentenced, in accordance with the verdict of the jury, to confinement in the penitentiary for a term of four years for an attempt to administer poison to one James Anderson. Opinion states the case.

*Wm. M. Perkins, Hoge & Hoge,* and *George E. Cassell,* for the plaintiff in error.

*Attorney-General R. A. Ayers,* for the commonwealth.

LEWIS, P., delivered the opinion of the court.

The indictment charges, in substance, that George W. Hicks (the plaintiff in error here) and Nancy Price, feloniously intending to kill the said James Anderson, did attempt to administer to him a quantity of poison, called strychnine, by soliciting one Laura Long, for a promised reward, to administer the same; and that they, in furtherance of their design to kill as aforesaid, did deliver to the said Laura Long a quantity of the said poison, to be by her put into the coffee of the said Anderson, who at the time was boarding with her, etc. It is not charged, however, that she agreed to administer the poison or that she did any act towards the commission of the crime.

There was a demurrer to the indictment, which was overruled, and the said Hicks, having been tried separately, pursuant to his election, was found guilty. He thereupon moved for a new trial, which motion was overruled; to which action of the court he excepted, and the facts are certified in the bill of exceptions.

The punishment for an attempt to administer poison is prescribed by sec. 3669 of the Code, which enacts as follows: "If any person administer, or attempt to administer, any poison or destructive thing in food, drink, medicine, or otherwise, or poison any spring, well, or reservoir of water, with intent to kill or injure another person, he shall be confined in the penitentiary not less than three nor more than five years."

The principal witness for the commonwealth was Mrs. Laura Long, whose uncontradicted evidence is substantially as follows: That on several occasions, at the house of the witness in Pulaski county, the first being on the 31st of August, 1888, the prisoner spoke to her about poisoning "old man Anderson," and said he knew Mrs. Price would approve it, as she had proposed to him (Hicks) to poison him.

On the 18th of September the prisoner passed the house of the witness on his way to Central to get the poison, saying to

her as he passed, that Mrs. Price had given him the money to buy it with.    On his return, he stopped at the house of the witness and showed her the poison he had purchased.    It was wrapped up in a paper, which was inside of an envelope, "which had on it a skull and bones and reading."    It was strychnine, and he said he had gotten it that day at a drugstore at Central. He told the witness he wanted her to go with him to the spring, near by, where Mrs. Price would meet them and deliver the poison to her and tell her all about it.    The witness said she could not go then, but would meet them there that night about 8 o'clock, if that would suit.    To this the prisoner answered that it would suit a great deal better, and that he would be present to see the poison delivered and to witness the agreement.    He then went on his way.

The witness went to the spring at the appointed hour, and after waiting there a little while Mrs. Price arrived.    She had a small package in one hand, which she said contained strychnine, and an envelope in the other.    The package she handed to the witness, saying, "Here it is."    She then directed the witness to put the poison in the old man's coffee that night when she got home, and told her as soon as he got "passed speaking and dropped" to give the alarm, and to say that the old man had fallen dead; for all which she offered to reward her liberally.    She said George (the prisoner) was "right out there," pointing in the direction of the corn-field.    The witness looked and saw some one there, and called the prisoner, but he did not answer.    Just then, at a signal from the witness, several men, in hiding near by, rushed up, and Mrs. Price ran away, and the witness delivered to one of these men (a Mr. Brown) the package of poison she had just received from Mrs. Price.    The witness also testified that she never agreed to administer the poison, and never intended to do so, and that she would not have done it for anything.    "I wanted to fool Hicks," she said, "because I wanted to catch him and to let other people know it."

The connection of the prisoner with the matter, as detailed by Mrs. Long, is fully established by the record, and the question, therefore, is whether these facts constitute an indictable attempt within the meaning of the law. We are of opinion that they do not, and as they substantially correspond with the allegations of the indictment, it follows that the demurrer to the indictment ought to have been sustained. It is an elementary rule of criminal pleading that an indictment in a case like the present must allege some act done by the defendant of such a nature as to constitute an attempt, in a legal sense, to commit the contemplated offence, otherwise the indictment will not be sufficient. Clarke's case, 6 Gratt., 675; 1 Whart. Crim. Law (9th ed.), sec. 192.

The question as to what is such an act, is often a difficult one to determine, and no general rule, which can be readily applied as a test to all cases, can be laid down. It has been truly said by a philosophical writer that "the subject of criminal attempt, though it presses itself upon the attention wherever we walk through the fields of the criminal law, is very obscure in the books, and apparently not well understood either by the text-writers or the judges." And it may be added that it is more intricate and difficult of comprehension than any other branch of the criminal law. Each case must, therefore, be determined upon its own facts, in the light of certain principles which appear to be well settled. The difficulty generally is in determining the proximity of the act in question to the offence in contemplation.

An attempt to commit a crime is compounded of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission. Code, sec. 3888; 2 Bish. Crim. Prac., sec. 71. Or, as Wharton defines it, "an attempt is an intended apparent unfinished crime." Therefore, the act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation. It must not be merely preparatory. In other

words, while it need not be the last proximate act to the consummation of the offence attempted to be perpetrated, it must approach sufficiently near to it to stand either as the first or some subsequent step in a direct movement towards the commission of the offence after the preparations are made. Uhl's case, 6 Gratt., 706; *McDade* v. *People*, 29 Mich., 50.

Thus, it has been often held, under statutes similar to our own, that the purchase of a gun with intent to commit murder, or the purchase of poison with the same intent, does not constitute an indictable offence, because the act done in either case is considered as only in the nature of a preliminary preparation, and as not advancing the conduct of the accused beyond the sphere of mere intent. "To make the act an indictable attempt," says Wharton "it must be a *cause* as distinguished from a *condition*. And it must go so far that it would result in the crime unless frustrated by extraneous circumstances." 1 Whart. Crim. Law, sec. 181.

This is well illustrated by the case of *People* v. *Murray*, 14 Cal. 159. In that case the defendant was indicted for an attempt to contract an incestuous marriage with his niece. It was shown that after declaring his intention to marry her, he actually eloped with her, and sent for a magistrate to perform the ceremony, and at the trial he was convicted. But on appeal, the judgment was reversed, the appellate court holding that these were mere preparations, and did not constitute an attempt within the meaning of the statute.

In delivering the unanimous opinion of the court, Field, C. J., said: "The evidence shows very clearly the intention of the defendant, but something more than mere intention is necessary to constitute the offence charged. Between preparation for the attempt and the attempt itself there is a wide difference. The preparation consists in devising or arranging the means or measures necessary for the commission of the offence; the attempt is the direct movement toward the commission after the preparations are made. To illustrate: a party may purchase

and load a gun with the declared intention to shoot his neighbor; but until some movement is made to use the weapon upon the person of his intended victim, there is only preparation, and not an attempt. For the preparation he may be held to keep the peace; but he is not chargeable with an attempt to kill. So in the present case, the declarations, and elopement, and request for a magistrate, were preparatory to the marriage; but until the officer was engaged, and the parties stood before him, ready to take the vows appropriate to the contract of marriage, it cannot be said in strictness—*i. e.*, in a legal sense—that the attempt was made. The attempt contemplated by the statute must be manifested by acts which would end in the consummation of the particular offence, but for the intervention of circumstances independent of the will of the party."

The same principle was recognized by the supreme court of Pennsylvania in a recent case, and one which bears a striking resemblance to the case before us. There the defendant was indicted and convicted for an attempt to administer poison, under a statute the provisions of which are substantially the same as those of our own statute. It was proved at the trial that the defendant, in a conversation with a witness, Neyer, stated his grievance against his intended victim, Waring, and his determination to be revenged, and then solicited Neyer to put poison in Waring's spring, so that he and his family would be poisoned, offering him a reward therefor. He also gave him directions how to administer the poison, and gave him the poison to be administered. But the witness refused to have anything to do with it, and handed it back to the defendant, and testified that he never intended to administer it.

Upon these facts the supreme court held that all that occurred at the interview with the witness and the legal inferences deducible therefrom, followed by no other act, were not sufficient to warrant a conviction for an attempt to commit the felony charged; that the act proved did not approximate sufficiently near to the commission of murder to establish an

attempt to commit it within the meaning of the statute, and the judgment was accordingly reversed. "Merely soliciting one to do an act," said the court, "is not an attempt to do that act. * * In a high, moral sense, it may be true that solicitation is an attempt; but in a legal sense, it is not. *Stabler* v. *Commonwealth*, 95 Pa., St. 318.

The court, in its opinion, also referred to the case of *Regina* v. *Williams*, 1 Cor. and K., 589, (S. C. 1 Den., C. C., 39,) which was a prosecution under the third section of the act of 1 Victoria, from which the Pennsylvania statute was substantially copied; and in that case it was held that the delivery of poison to an agent, with directions to him to cause it to be administered to another, was not sufficient to establish an attempt to murder. In that case the agent was actually given money for his services, and immediately proceeded with the poison to the house of the intended victims; but upon his arrival there he gave up the poison to them, and told them all about it. The prisoners were convicted, but at the ensuing term the case was considered by the fifteen judges, who held the conviction wrong.

The application of these principles to the facts of the present case shows very clearly, we think, that the judgment is erroneous. Here, undoubtedly, there was an intent to commit murder; but the acts done do not amount to anything more than the mere arrangement of the proposed measures for its commission. They were nothing more than mere preparations, and even the intended preparations were not completed before the criminal design was frustrated. The means intended to be employed to consummate the offense were: first, the purchase of poison, and, secondly, the delivery of the poison to an agent, to be by her administered. But as the party to whom the poison was delivered refused to administer it, or to do any act in furtherance of the design, there has been no direct act done towards the commission of the offense, and, consequently, no attempt, in a legal sense, to commit the crime

has been established. In other words, the acts proved, no matter how, in a moral point of view, they may be regarded, do not, in the eye of the law, approximate sufficiently near to the commission of murder to advance the conduct of the prisoner beyond the sphere of mere intent.

That the mere delivery of poison by one person to another, for the purpose disclosed by the record in the present case, does not constitute an attempt to administer poison within the meaning of the statute is clear, we think, because it is not such an act as is likely, in the natural course of events, to bring about the result desired. On the contrary, the presumption in such a case is the other way, since a criminal intent on the part of the person to whom the poison is delivered, is not to be presumed, and hence, for this reason, if no other, the act of delivering the poison is not such an one as can be considered a judicial cause, or a direct step in the actual endeavor to commit a crime—without which there can be no attempt within the meaning of the statute. 1 Whart. Crim. Law (9th ed.), sec. 178.

We are, therefore, constrained to hold that the conviction is wrong, and that the judgment must be reversed and the demurrer to the indictment sustained. If the law be defective in not reaching a case like the present, as it does not, the legislature, not the courts, can remedy the defect. We can only administer it as it is.

HINTON, J., dissenting, said:

I am of the opinion that the indictment, although inartificially drawn, is an indictment under sec. 3888 of the Code of 1887, and, so regarding it, that the crime imputed to the prisoner is fully established. And I am further of opinion that if it be regarded as an indictment under sec. 3669, that the prisoner should not be discharged, but be held to await an indictment to be preferred under sec. 3888 of said Code. See Bush's

Dissenting Opinion.

case, 4 Hill; Stabler's case, 95 Penn. St., 318. The acquittal of one offence does not operate as a bar to a prosecution for another and distinct substantive offence. I am, therefore, constrained to dissent from the opinion of the majority of the court. See *Page* v. *Commonwealth*, 26 Gratt.

JUDGMENT REVERSED.