# Richmond.

## Milton Lee v. Commonwealth.

January 14, 1926.

1. Attempts to Commit Crimes—*Attempt to Commit Murder—Evidence Sufficient to Support Conviction—Case at Bar.*—In the instant case accused, after a difficulty with prosecuting witness, announced his intention of going back home, getting his gun and shooting the prosecuting witness. In about half an hour, accused returned with a gun and was heard to mutter that "he was going to kill another." Accused stationed himself outside the door of the house of the prosecuting witness with his gun held in position to shoot. The prosecuting witness jumped out and seized accused from behind. A struggle ensued in which accused tried to get the gun towards the prosecuting witness. The gun was discharged and the prosecuting witness said that he did not pull the trigger.

   *Held:* That the evidence was sufficient to support conviction of accused of an attempt to murder the prosecuting witness.

2. Attempts to Commit Crimes—*Definition—Intent—Ineffectual Act.*—An attempt to commit a crime consists of two parts, (a) the intent to commit it, and (b) a direct ineffectual act towards its commission; and such act must reach far enough towards the accomplishment of the desired result to amount to the commencement of the consummation; but the overt act need not be the last proximate act prior to the consummation of the crime attempted to be perpetrated.

3. Attempts to Commit Crimes—*Evidence of Intent—Accused's own Statements.*—There can be no stronger proof of intention to commit murder than defendant's own expression twice repeated of his intention to kill, supported by his actions in procuring a gun and lying in wait for his victim.

4. Attempts to Commit Crimes—*Acts Done in Furtherance of Design—Actual Firing of Gun—Case at Bar.*—When the intent or design to commit a crime exists, what act or acts done in furtherance of design will constitute an attempt, is one of the most intricate propositions of the criminal law with which courts have to deal. In the instant case it was contended that if defendant did not intentionally fire the gun with intent to kill, his acts fell short of constituting an attempt.

*Held:* That, in the instant case, it was immaterial how the gun was discharged.

5. ATTEMPTS TO COMMIT CRIMES—*Attempt to Murder—Instructions—Firing of Gun.*—In the instant case, a prosecution for attempt to murder, the court was asked to instruct the jury that it was necessary for the Commonwealth to prove that "the defendant fired the gun."

*Held:* That, as the actual firing of the gun was not necessary in the instant case to complete the offense charged, there was no error in refusing this instruction. Moreover, it assumed that defendant did not fire the gun, and that question was for the jury, and if the testimony of the prosecuting witness was to be believed, the accused did fire it.

6. REASONABLE DOUBT—*Instructions—Omission of the Words "Beyond Reasonable Doubt."*—In the instant case, a prosecution for attempted murder, it was objected to an instruction that it omitted the words "beyond reasonable doubt," in telling the jury that if they believed from the evidence certain facts they should convict accused. In a number of instructions the jury were told that they could not convict accused unless they believed his guilt was established beyond a reasonable doubt. The instructions must be read together, and even if the instruction under consideration was defective, it is inconceivable that the jury could have been misled in any way by the omission.

7. ATTEMPTS TO COMMIT CRIMES—*Attempt to Commit Murder—Evidence of a Former Difficulty—Case at Bar.*—In the instant case, a prosecution for attempted murder, evidence of a prior difficulty between accused and the prosecuting witness was objected to as having no bearing on the issue and as very damaging to the accused. The defense had sought to show very friendly relations between the accused and the prosecuting witness.

*Held:* That the evidence as to the prior difficulty was admissible to refute the claim of great friendship between the parties and to throw light at least in a circumstantial way on the prior relationship of the parties.

8. ATTEMPTS TO COMMIT CRIMES—*Section 4767 of the Code of 1919—Common Law—Punishment.*—Section 4767 of the Code of 1919, providing for punishment for attempts to commit crime, supersedes the common law.

9. ATTEMPTS TO COMMIT CRIMES—*Common Law—Attempt to Commit Murder—Misdemeanors.*—An attempt to commit a felony, at common law, was a misdemeanor. Section 4767 of the Code of 1919 does not change the common law as to the grade of the offense, so far as murder is concerned, except as to murder in the first degree. Attempt to commit murder in the first degree is a felony under the statute, but an attempt to commit murder in the second degree remains a misdemeanor. Murder in the second degree is not punish-

able by death, hence under the statute an attempt to commit murder in the second degree, or an attempt to commit voluntary manslaughter, would be punished by confinement in jail not less than six nor more than twelve months, and hence is a misdemeanor.

10. ATTEMPTS TO COMMIT CRIMES—*Attempt to Commit Murder—Punishment.*—Under section 4922 of the Code of 1919, upon an indictment charging murder in the first degree, accused might be convicted not only of murder in the first degree but of murder in the second degree or manslaughter, and accused might be found guilty of an attempt to commit murder, first or second degree, or manslaughter, and where an indictment specifically charges an attempt to commit murder, the jury can find the accused guilty of an attempt to commit murder in the second degree, and impose the penalty of one year in jail.

Error to a judgment of the Circuit Court of Essex county.

*Affirmed.*

The opinion states the case.

*David Meade White* and *J. D. Mitchell*, for the plaintiff in error.

*John R. Saunders,* Attorney General, *Leon M. Bazile,* and *Lewis H. Machen,* Assistant Attorneys General for the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

At the October term, 1923, of the Circuit Court of Essex county, a grand jury returned an indictment against Milton Lee, charging him with attempting to murder one C. Ryland Loving, as follows:

"The jurors of the Commonwealth, in and for the body of the county of Essex, and now attending the said court at its October term, 1923, upon their oath present that Milton Lee on the_____day of _____, 1923, in the county aforesaid, with malice aforethought, did unlawfully and

maliciously attempt to commit the crime of murder by then and there attempting with a shot gun, loaded with gun powder and leaden bullets, with which he, the said Milton Lee, was then and there armed, to kill and murder C. Ryland Loving, and in such attempt, having previously expressed to the said C. Ryland Loving an intent so to do, he, the said Milton Lee, did go to his home and arm himself with the said shot gun, loaded as aforesaid, and go upon the premises of R. A. Loving, which was the home of the said C. Ryland Loving, with the intent then and there feloniously and maliciously to kill the said C. Ryland Loving with the said shot gun then and there in his possession, and in the further attempt to commit the said offense with the said shot gun then and there in his possession, loaded as aforesaid, he, the said Milton Lee, did creep around the corner of the house seeking the said C. Ryland Loving, him to kill and murder, by stealth, and further did attempt to shoot off and discharge the said shot gun in the attempt to commit the said offense, against the peace and dignity of the Commonwealth of Virginia."

The accused was tried on the 17th day of June, 1924, found guilty by the jury and his punishment fixed at twelve months in jail. The court overruled a motion for a new trial, and judgment was rendered upon this verdict, but was suspended pending application to this court for a writ of error and supersedeas, which were afterwards duly granted.

The evidence on behalf of the Commonwealth, from which viewpoint we must look at the evidence here, justifies the following statement of facts:

On July 15, 1922, the accused, who conducted a barber shop in Essex county, near Hustle postoffice, and resided at the home of his father, went to the

home of his first cousin, C. Ryland Loving, who also resided with his father, a short distance away and on the opposite side of the public road, in a somewhat intoxicated condition. The accused entered the house of R. A. Loving, the father of C. Ryland Loving, and entered the room where Mrs. R. A. Loving was and began cursing and swearing. C. Ryland Loving asked the accused what business he had there, and the accused replied, with an oath, that he had no business there, whereupon C. Ryland Loving told the accused to get out. The accused said that he (Loving) was not man enough to put him out. Loving told the accused that if he would give up the pistol which the accused had in his pocket, he would put the accused out. The accused then gave up his pistol to Mrs. R. A. Loving. The two wrestled there a while and then the accused promised to go if C. Ryland Loving would let him loose. Upon being released the accused drew a knife and attempted to open it, but subsequently agreed again to leave. He then demanded his pistol, which C. Ryland Loving refused to give him. The accused said: "All right; I have got another gun. I will go back home and come back and get you and the gun both." About thirty or forty-five minutes later the accused returned with a shotgun in his hand, and C. Ryland Loving, seeing him approach, concealed himself inside of the house and heard the accused, as he came to the corner of the house, say: "God damn, I shot one twice and I am going to kill another." The accused was standing near the house holding the gun. C. Ryland Loving stepped out of the door and over the banisters and grabbed the accused from behind and threw him to the ground. During the scuffle the accused "was trying to get the gun towards" C. Ryland Loving, when the gun was discharged and the barrel burst.

C. Ryland Loving says he did not pull the trigger.
The father of the accused came up then and took him
away. The accused had not been in the house of R. A.
Loving for two or three years. About six years before
the trial he had been ordered to stay away from the
house and had been there only once after that time.

There are five assignments of error, which will be
considered in order.

1. That the court erred in refusing to set aside the
verdict as being contrary to the law and the evidence.

2. That the court erred in refusing to give instruc-
tions Nos. 11 and 12, requested by the accused.

3. That the court erred in giving instruction No.
13 at the instance of the Commonwealth.

4. That the court erred in allowing questions and
answers set out in bills of exceptions Nos. 1, 2 and 3.

5. That the court erred in sentencing the accused
in accordance with the verdict, since the accused, hav-
ing been indicted for an attempt to commit murder
in the first degree, could not have been found guilty of a
misdemeanor, under section 4767 of the Code.

[1] (1) The indictment charges the accused with
an attempt to murder C. Ryland Loving. Did the·
accused, in contemplation of law, make such an at-
tempt? We think he did.

[2] An attempt to commit a crime consists of two
parts, (a) the intent to commit it, and (b) a direct
ineffectual act towards its commission; and such act
must reach far enough toward the accomplishment of
the desired result to amount to the commencement of
the consummation; but the overt act need not be the
last proximate act prior to the consummation of the
crime attempted to be perpetrated. *Uhl's Case*, 6
Gratt. (47 Va.) 706; *Hicks' Case*, 86 Va. 225, 9 S. E.
1024, 19 Am. St. Rep. 891; *Glover's Case*, 86 Va. 382,
10 S. E. 420.

[3] There can be no doubt, in the instant case, that the *intent* was clearly established. The accused, upon leaving Loving's home on the occasion of his first visit, declared, after demanding his pistol: "All right, I have another gun. I will go back home and come back and get you and the gun both." In half an hour, or slightly more, he returned with a gun, and as he approached Loving's house he was heard to say: "God damn, I shot one twice and I am going to kill another." It is not conceived how there could be stronger proof of intention than the defendant's own expression, twice repeated, of his intention to kill, supported, as it is, by his actions, which speak louder than his words.

[4] When the intent or design to commit a crime exists, what act or acts done in furtherance of the design will constitute an attempt, is one of the most intricate propositions of the criminal law with which courts have to deal. It is contended in the instant case, that because it is not shown by the evidence that the accused intentionally fired the gun with the intent to kill Loving, his acts fall short of constituting an attempt; that at most, all he did, if intent is established, was to make preparations to commit murder.

In *Stokes* v. *State*, 92 Miss. 415, 46 So. 627, 21 L. R. A. (N. S.) 898, it is said: "Whenever the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt, and this court will not destroy the practical and common sense administration of the law with subtleties as to what constitutes preparation, and what an act done toward the commission of a crime. Too many subtle distinctions have been drawn along these lines for practical purposes. Too many loopholes have been made whereby parties are enabled to escape punishment for that which is known to be criminal in its worst sense."

In the *Stokes Case* also it was contended that because the defendant did not actually shoot at a person he could not be held guilty of an attempt to commit murder. In disposing of this question the court said: "Where a party is indicted for an attempt to murder by shooting with a gun, at what time shall it be said that such party has committed an overt act. Is it necessary, in order to convict, that a party shall be allowed to proceed to do all towards the accomplishment of his crime, except actually to pull the trigger? If not, then when may it be said that an overt act has been committed? When it is proved that a party has the design to kill and has the means to accomplish that design, shall it be held that no crime is committed unless that design is frustrated at the very instant it is attempted to be carried out? Must the citizen be required to imperil his existence up to the time of the actual menace before he can claim the protection of the law and procure the punishment of the offender? The mere buying of the gun would be preparation and not attempt. The mere buying of a gun and loading it might not constitute an attempt. But when the facts show, in furtherance of the design, that a gun has been procured and loaded, and the party so procuring and loading the gun has armed himself and started out on his mission to kill, but is prevented from carrying out his design by such extraneous circumstances as that the party he intends to kill does not come to the point where he expected to carry out his design, or if the party designing to kill is arrested and prevented from carrying out the design, he is clearly guilty of the attempt."

In most of these views we heartily concur. The facts in the instant case, however, are more conclusive of guilt than those in the *Stokes Case*. Lee expressed his

intention to kill Loving. He went to his home and
returned with his gun, muttering as he approached
Loving's house: "I shot one twice and I am going to
kill another." He thereupon stationed himself outside
the door with his gun held in position to shoot. If
it be conceded that all this was mere preparation, and
that if he had left the Loving premises without further
happening, his acts would have fallen short of an
attempt to commit murder, still we cannot agree with
the learned counsel for the accused that what sub-
sequently occurred, as narrated by Loving, was a fight
between Loving and the accused in which Loving was
the aggressor, and an attempt to kill cannot be in-
ferred from such evidence.

Loving knew the defendant's condition and his
mental attitude; he heard what he said when he left
a half hour before, and what he said upon his return,
and he saw him place himself in a position of advantage
where he could have carried out his expressed purpose
to kill if Loving had stepped out the door in his view.

What would have happened if he had not taken the
very wise precaution of jumping upon and seizing the
accused from behind is a matter of conjecture, but
Loving testified that after he had seized Lee "he was
trying to get the gun to me and I was trying to get it
away. In the tussle I threw him down and while
down on the ground he was trying to get the gun to-
wards me and the gun went off. I don't know how the
gun went off."

It is immaterial how the gun was discharged. If the
jury believed the statement of C. Ryland Loving
above quoted, it was amply sufficient, in connection
with the other evidence in the case, to establish the
guilt of the accused as charged in the indictment.
*Hicks* v. *Com.*, 86 Va. 226, 9 S. E. 1024, 19 Am. St.

Rep. 891; *Thacker* v. *Com.*, 134 Va. 767, 114 S. E.. 504; *Andrews* v. *Com.*, 135 Va. 451, 115 S. E. 558.

[5] (2) It is assigned as error that the court refused to grant instructions Nos. 11 and 12, offered by defendant.

Instruction No. 11 was as follows: "The court instructs the jury that it is necessary to prove beyond a reasonable doubt and to their satisfaction that the defendant fired the gun, and there being no evidence that the defendant fired the gun, the jury must find the defendant not guilty."

As has heretofore been shown, there was no error in refusing to give this instruction. The actual firing of the gun was not necessary to complete the offense charged. *Stokes* v. *State, supra.*

The instruction was bad also because it assumes the defendant did not fire the gun. The question as to who fired the gun was one for the jury, and if Loving's testimony is to be believed, the accused did fire it.

Instruction No. 12 is as follows: "The court instructs the jury that in order to constitute an attempt to commit crime two elements are essential, first, the intent to commit, and second, a direct ineffectual act done towards its commission; and in order to convict, the accused of the offense charged in the indictment, the Commonwealth must prove beyond all reasonable doubt that the accused actually intended to kill Ryland Loving, and that he fired the shot gun at him with the specific intent to kill him, and unless the jury believe from the evidence beyond all reasonable doubt that the accused actually intended to kill the said Ryland Loving, and fired the shot gun at him with the specific intent to kill him, then they must find the accused not guilty."

[6] This instruction is erroneous for reasons heretofore assigned and was properly refused.

(3) Instruction No. 13, given at the request of the Commonwealth, and objected to by the accused, was as follows: "The court instructs the jury that if they believe from the evidence that Milton Lee armed himself with a shot gun at his own home and then went upon the premises of R. A. Loving, where Ryland Loving then was, in search of said Ryland Loving and with the intent to kill said Ryland Loving with said shotgun, and would then and there have killed said Ryland Loving with said gun if he had not, against his will and intent, been frustrated from doing so, then such acts and intent on the part of said Milton Lee constituted an attempt on the part of said Lee to commit such offense and they must find him guilty."

The objection to this instruction is that it omits the words "beyond a reasonable doubt" after the word "evidence" in the second line.

There were ten instructions given in the case. In seven of these instructions the jury were told they could not convict the accused unless they believed his guilt was established beyond a reasonable doubt. The instructions must be read together, and even if the instruction under consideration was defective, it is inconceivable that the jury could have been misled in any way by the omission.

[7] (4) Bills of exception Nos. 1, 2 and 3 related to questions propounded by the Commonwealth's attorney to C. Ryland Loving and his father R. A. Loving, and related to some prior difficulty, the character of which is not definitely shown, between the accused and R. A. Loving, which resulted in accused being ordered off the Loving premises, but the questions propounded specifically related to the length of time it had been, prior to the difficulty which resulted in the instant prosecution, since the accused had been on R. A.

Loving's place. C. Ryland Loving, in answer to the questions, stated that it had been a "long, long time since Milton Lee had been on the place," and R. A. Loving testified that he had ordered him off his premises about six years before and he had not seen him back there within two or three years.

It is claimed that this evidence had no bearing on the issue and was very damaging to the accused.

We do not think so. The defense sought to show very friendly relations between the accused and C. Ryland Loving, and this evidence was admissible to refute the claim of great friendship and to throw light, at least in a circumstantial way, on the prior relations of the parties. *Brown* v. *Com'th*, 138 Va. 807, 122 S. E. 421; *Hanriot* v. *Sherwood*, 82 Va. 1.

(5) It is alleged that the accused was indicted under section 4767 of a distinct statutory offense, viz., an attempt to commit murder, and that this specific offense is a felony. The jury found the defendant guilty as charged in the indictment, but fixed his punishment at confinement in jail for twelve months.

The contention is that the jury could not, upon an indictment for attempt to commit murder, impose the penalty of one year in jail. This contention is thus expressed in the petition for a writ of error:

"Section 4767 of the Code makes an attempt to commit an offense a crime and provides the punishment. Under this section an attempt to commit an offense punishable with death, other than rape, is a felony, punishable by confinement in the penitentiary from two to five years. This is a separate and distinct statutory offense. The statute makes the attempt a crime. Without the statute it would be no offense. The offense is not divisible. No offense of a lower degree is embraced within it. The accused was indicted for a

felony under this statute, that is, for an attempt to commit first degree murder which is punishable with death. He had to answer this charge and this alone. The indictment embraced no other crime or offense. Therefore, the accused had to be convicted of the felony charge or nothing. The court had no jurisdiction to try him on any other charge or to convict him for anything less than a felony.

"Section 4918 provides: 'If a person indicted of felony be by the jury acquitted of part and convicted of part of the offense charged, he shall be sentenced for such part as he is convicted of, if the same be substantially charged in the indictment, whether it be felony or misdemeanor.'

"Now, the indictment simply embraced one offense, namely, an attempt to commit first degree murder. The court had no power or jurisdiction to try him for any other offense, and the verdict and judgment were void."

[8] Section 4767, as far as it is pertinent here, is as follows: "Every person who attempts to commit an offense, and in such attempt does any act towards its commission, shall, when not otherwise provided, be punished as follows: If the offense attempted be punishable with death, the person making such attempt shall be confined in the penitentiary not less than two nor more than five years, except that attempts to commit rape shall be punishable with death, or in the discretion of the jury, or of the court trying the case without a jury, by confinement in the penitentiary not less than three nor more than eighteen years; if it be punishable by confinement in the penitentiary, he shall be confined in jail not less than six months nor more than twelve months."

This section supersedes the common law in reference to attempts to commit crime.

[9] Attempt to commit a felony (including murder), at common law, is a misdemeanor. 21 Cyc. 779, 2, 30 C. J. 12, sec. 151. So that counsel for accused is in error when it is stated that without the statute an attempt to commit a crime constituted no offense. The statute does not change the common law as to the grade of the offense, so far as murder is concerned, except as to murder in the first degree. Attempt to commit murder in the first degree is a felony under the statute, but an attempt to commit murder in the second degree remains a misdemeanor. Murder in the second degree is not punishable by death, hence under the statute an attempt to commit murder in the second degree, or an attempt to commit voluntary manslaughter, would be punished by confinement in jail not less than six nor more than twelve months, and hence is a misdemeanor.

We think the jury had a right, under the evidence in the instant case, and would have been fully justified in finding the accused guilty of an attempt to commit murder in the first degree, but we think the indictment charged and that they had the right to find him guilty of an attempt to commit murder in the second degree, and that, fairly construed, the verdict indicates this is what they did.

Section 4923 of the Code provides: "On an indictment for felony, the jury may find the accused not guilty of the felony, but guilty of an attempt to commit such felony; and a general verdict of not guilty, upon such indictment, shall be a bar to a subsequent prosecution for an attempt to commit such felony."

[10] Under this statute, it cannot be denied that, upon an indictment charging murder in the first degree, (under which an accused might be convicted not only of murder in the first degree, but of murder in the

second degree or manslaughter, etc.), one may be found guilty of an attempt to commit murder, first or second degree, or manslaughter.

It follows that where an indictment specifically charges an attempt to commit murder, if it turns out from the evidence, as the jury seemed to think in the instant case, that if death had ensued the killing would have been with malice but not a wilful, deliberate and premeditated killing, the jury could in such case find the accused guilty of an attempt to commit murder in the second degree. If this were not true, to set aside the verdict in this case would virtually operate as a discharge of the accused. Counsel would be swift, we think, upon a new trial, to urge that the verdict found by the jury in the first trial operated as an acquittal of an attempt to commit murder in the first degree.

Upon the whole case, and for the reasons assigned, we think there was no error of which the accused can justly complain, and the judgment of the trial court will be affirmed.

*Affirmed.*