COURT OF APPEALS OF VIRGINIA

Present:    Judges Humphreys, Beales and Decker
Argued by teleconference


DE'JOUR DAVONTE REAUX-KING, S/K/A
 DE'JOUR DEVANTE REAUX-KING

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0734-14-2                JUDGE MARLA GRAFF DECKER
                                                          APRIL 28, 2015

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                                        T. J. Hauler, Judge[1]

                    (Mark E. Englisby; Englisby, Vaughn & Slone, on brief), for
                    appellant.  Appellant submitting on brief.

                    Victoria Johnson, Assistant Attorney General (Mark R. Herring,
                    Attorney General, on brief), for appellee.


        De'Jour Davonte Reaux-King appeals from his conviction in a bench trial for attempted

robbery, in violation of Code §§ 18.2-58 and 18.2-26.  Specifically, he contends that the

Commonwealth failed to establish that he committed a direct, overt act to accomplish a robbery and

therefore, did not prove the offense of attempted robbery.  The Court holds that the evidence was

sufficient to support the conviction and affirms the judgment of the trial court.

<hr>

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Judge Designate Thomas V. Warren presided over the trial in this case.  Judge T. J.
Hauler presided over the sentencing hearing.

## I. BACKGROUND[2]

On July 22, 2012, Cynthia Morris was working the 11:00 p.m. to 7:00 a.m. shift at a Wawa convenience store in Chesterfield County. Sometime between 3:00 a.m. and 4:00 a.m. she received a call on the store phone from the appellant. He was a regular customer in the store and identified himself to Morris. The appellant asked her if she was busy and if she could step outside and speak with him if he came to the store. She told him that she was not busy and could go outside to meet with him when he arrived.

The appellant arrived within fifteen minutes of his call to Morris, and she went outside to meet him. The appellant told Morris that he had a plan to rob her in her capacity as a store employee. He said that "he had been contemplating and planning this for a while [and] that he was glad [she] was working overnight." He explained that "[h]e had a machete." He specifically told her that "[h]e was going to put it to [her] throat and rob Wawa." He showed her the machete that he had hidden behind the ice machine outside the store. The appellant said that he expected her to "[g]ive him all of the money." He added that he would split it with her once she finished her shift.

Morris responded by telling him "no," suggesting that she had no desire to steal from her place of employment. Morris made an effort to "help him" by trying to convince the appellant to change his mind. She told the appellant that he would not get much money because they did not keep more than $100 in the cash drawer. However, the appellant was persistent about his plan to rob her of the store's money. He told her that his rent was overdue, he was about to be evicted from

---

[2] Virginia's appellate courts "view the evidence in the light most favorable to the Commonwealth, the prevailing party in the trial court." Preston v. Commonwealth, 281 Va. 52, 57, 704 S.E.2d 127, 129 (2011). Examining "the record through this evidentiary prism requires [this Court] to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn'" from that evidence. Cooper v. Commonwealth, 54 Va. App. 558, 562, 680 S.E.2d 361, 363 (2009) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).

his apartment, "and he was doing what he had to do." The appellant explained to her that regardless of the amount of money, he was going to commit the robbery. In response, Morris "constantly told him, no." She ultimately went back inside the store because she felt "[v]ery uncomfortable." The entire conversation lasted about twenty minutes.

Once she returned to the store, Morris saw the appellant "pacing back and forth . . . watching [her] every move to make sure [she] didn't hit any buttons or wasn't on [her] cell phone or anything." The appellant walked into the store twice. Each time he looked around and then left. On the first occasion, he remained in the store for about two minutes. The appellant entered right by the ice machine, walked "far back toward the drink area to the door," and got a cup of water. He did not buy anything or use the bathroom. When he left the store, he began pacing again and "watching who was going in and out to see when the security guard at [Morris'] register was leaving." He then entered the store a second time, staying about three minutes. That time, the appellant did not do anything except "walk[] back to the bar where the coffee [was] and walk[] back outside."

Morris contacted her manager using her store headset that enabled employees to communicate with one another. She told the manager to call 9-1-1 because she believed a robbery was imminent. Morris saw the appellant "when he was getting ready to go for the machete." She observed him lean behind the ice machine where the machete was hidden.

The manager contacted the police. A police officer arrived at the store approximately three minutes after the 9-1-1 call. Officer Teaman of the Chesterfield County Police Department assisted officers at the Wawa. Teaman spoke with an employee and found the machete behind the ice machine. Officer Diman, also with Chesterfield police, identified a photograph of the sheath that the appellant was wearing around his waist as well as a photograph of the machete. The machete "matched" the appellant's sheath.

- 3 -

Police arrested the appellant at the scene. Officer Diman questioned him. The appellant admitted to speaking with Morris about "robbing the Wawa." He also said that he told her "no one would get hurt." According to the appellant, he offered Morris money for her cooperation. He also mentioned to the officer that he needed the money to pay his rent. The appellant denied having the machete and threatening Morris. He told Diman that if he "was going to rob the store [he] would use a gun."

The appellant made a motion to strike the evidence, which the trial court denied.[3] The court found the appellant guilty of attempted robbery and sentenced him to ten years in prison with nine years and six months suspended.

## II. ANALYSIS

The appellant contends that the trial court erred by finding the evidence sufficient to convict him of attempted robbery. Specifically, he suggests that the Commonwealth failed to prove that he committed a direct, overt act calculated to accomplish the offense.

The appellant was tried by the circuit court, sitting without a jury. Consequently, that court was the fact finder and its judgment is afforded the same weight as a jury verdict. Preston v. Commonwealth, 281 Va. 52, 57, 704 S.E.2d 127, 129 (2011). The trial court's decision will not be reversed "unless it is 'plainly wrong or without evidence to support it.'" Id. (quoting Code § 8.01-680). The law is also clear that determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify. Redmond v. Commonwealth, 57 Va. App. 254, 265, 701 S.E.2d 81, 86 (2010). Further, the fact finder is responsible for "'determin[ing] what inferences are to be

---

[3] The appellant was also charged with solicitation to commit a felony, in violation of Code §§ 18.2-58 and 18.2-29. The trial court dismissed this charge on a motion to strike the evidence.

drawn from proved facts, provided that the inferences'" reasonably flow from those facts. See Burton v. Commonwealth, 58 Va. App. 274, 283, 708 S.E.2d 444, 449 (2011) (quoting Beck v. Commonwealth, 2 Va. App. 170, 176, 342 S.E.2d 642, 645 (1986)).  Finally, if the evidence is sufficient to support the conviction, the reviewing appellate court will not "substitute its own judgment for that of the trier of fact, even if its opinion might differ from the conclusions reached by the [fact finder]."  Jordan v. Commonwealth, 286 Va. 153, 156-57, 747 S.E.2d 799, 800 (2013); see Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*).  We review the challenge to the sufficiency of the evidence under these well-established legal principles.

Robbery is the "'taking, with intent to steal, of the personal property of another, from his person or in his presence, against his will, by violence or intimidation.'"  Jay v. Commonwealth, 275 Va. 510, 524, 659 S.E.2d 311, 319 (2008) (quoting Pierce v. Commonwealth, 205 Va. 528, 532, 138 S.E.2d 28, 31 (1964)).  Attempted robbery requires proof that the defendant intended to commit a robbery.  Id. at 524-25, 659 S.E.2d at 319.  Further, the Commonwealth must prove that the defendant "'committed a direct, but ineffectual, act to accomplish the crime.'"  Id. at 525, 659 S.E.2d at 319 (quoting Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 55, 79 (2000)).  In other words, "an attempt to commit" offense requires both the intent and "'a direct act done towards its commission, but falling short of the execution of the ultimate design.'"  Id. (quoting Glover v. Commonwealth, 86 Va. (11 Hans.) 382, 385, 10 S.E. 420, 421 (1889)).  The direct act is also referred to as an "overt act."  Id. at 525, 659 S.E.2d at 320.

The body of law relating to the "overt act" element is also well established, as is the rationale for the necessity to prove it in each case.  "An overt act is required to prove an attempted offense because without it, there is too much uncertainty as to the accused's actual intent."  Tharrington v. Commonwealth, 2 Va. App. 491, 494, 346 S.E.2d 337, 339 (1986).  "However, if 'the design of a person to commit a crime is clearly shown, slight acts done in

furtherance of this design will constitute an attempt'" to commit the underlying crime. Id. (quoting State v. Bell, 316 S.E.2d 611, 616 (N.C. 1984)); see Martin v. Commonwealth, 195 Va. 1107, 1112, 81 S.E.2d 574, 577 (1954); Fortune v. Commonwealth, 14 Va. App. 225, 229, 416 S.E.2d 25, 28 (1992) ("[W]here intent has been shown, any slight act done in furtherance of this intent will constitute an attempt.").

Application of this area of the law is very fact specific, and each case is determined by its unique circumstances as presented through the evidence. Consequently, whether something is an overt or direct act must be determined by the facts of each case. Jay, 275 Va. at 525, 659 S.E.2d at 320. In order to be an overt act, the act must be "'well calculated to accomplish the result intended.'" Id. at 526, 659 S.E.2d at 320 (quoting Granberry v. Commonwealth, 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946)). Although the act must be more than mere preparation, it need not be the last act necessary to accomplishing the crime. Id.; Tharrington, 2 Va. App. at 494, 346 S.E.2d at 339. The act must be a "'step in a direct movement towards the commission of the offence after the preparations are made.'" Jay, 275 Va. at 526, 659 S.E.2d at 320 (quoting Hicks v. Commonwealth, 86 Va. (11 Hans.) 223, 226-27, 9 S.E. 1024, 1025 (1889)); see Rogers v. Commonwealth, 55 Va. App. 20, 26, 683 S.E.2d 311, 314 (2009). It must be the commencement of the offense.

In this case, the appellant's intent to commit robbery was clear at the time he was detained by the police. Whatever the appellant's original intent in discussing his plans with Morris, the record shows that when Morris refused to help, the appellant told her that he intended to rob her of the store's cash. The combination of Morris' testimony, the appellant's statements to the police, and the evidence of the machete and sheath support the trial court's conclusion that the appellant's intent to commit the robbery was clear. Therefore, in order to prove an overt act

to support an attempt to commit the crime, the Commonwealth needed to present evidence of only a slight act done in furtherance of commission of the robbery.

Viewed under the appropriate legal standard, the evidence also supports the trial court's conclusion that the appellant committed an overt act in furtherance of his plan to rob Morris of the store's money. The record shows that the appellant involved Morris in his planned crime at the outset. He telephoned her to see if she was busy and could speak with him outside the store, away from others. He brought a machete to the Wawa and hid it behind the ice machine directly outside the store. The evidence supports the inference that the sheath that the appellant wore on his waist that "matched" the machete was intended for carrying it in a concealed manner. The appellant showed Morris the machete and explained his plan to her. He told her "he was going to put [the machete] to her throat and rob" her of the store's money. When Morris said "no," refused to cooperate, and tried to discourage him from committing the offense, the appellant "was persistent" that "he was going to rob" Morris of the money in the cash register. He made his intention very clear to her that absent her cooperation, he was going to execute a robbery. Once Morris went back inside, the appellant paced around outside. He entered and exited the store twice, looking around without buying anything or using the restroom. The appellant remained in close proximity outside, pacing near the ice machine. According to Morris, her manager contacted the police just as the appellant leaned behind the ice machine where the machete was hidden.

This evidence demonstrated that the appellant expressly informed Morris of his intention to rob the store during her shift. He already had a sheath in his pants in which to carry the machete. The appellant entered the store twice to observe and presumably to decide whether the time was right to retrieve his machete and commit the robbery. The police arrived as he was leaning behind the ice machine where the machete was hidden. These facts, in their entirety,

- 7 -

give rise to the reasonable inference that the police arrived just as the appellant was reaching for the machete in commencement of the robbery and the only thing that stopped him was the police. Rogers, 55 Va. App. at 28, 683 S.E.2d at 315 (explaining that "if a crime is stopped before its completion by 'the intervention of circumstances independent of the will of the party' who intended to commit a *completed* crime, then that party *can* be convicted of attempting to commit that crime" (quoting Hicks, 86 Va. at 228, 9 S.E. at 1026)). This evidence, viewed in the light most favorable to the Commonwealth, supports the trial court's finding that the appellant committed an overt act, albeit a slight one. See generally Wilson v. Commonwealth, No. 2420-08-2 (Va. Ct. App. Oct. 20, 2009) (holding that the evidence was sufficient to prove attempted robbery where two men were apprehended hiding outside a store as they lay in wait for the manager to arrive and confessed their intent and previous preparation to commit the robbery); Williams v. Commonwealth, No. 0641-03-1 (Va. Ct. App. Apr. 6, 2004) (affirming the trial court's finding of an overt act in furtherance of an attempted robbery where the two men wore masks and approached the front of a bank but stopped before entering the building).[4]

This Court's decision in Hopson v. Commonwealth, 15 Va. App. 749, 752, 427 S.E.2d 221, 223 (1993), does not compel a different result. See also Jordan v. Commonwealth, 15 Va. App. 759, 427 S.E.2d 231 (1993) (considering the appeal of Hopson's co-defendant). In Hopson, we held that the evidence was insufficient to support an attempted robbery conviction where the defendant's companion had surveyed the store and had a gun in his pocket. 15 Va. App. at 752, 427 S.E.2d at 223. The two men "were outside the store behaving

---

[4] We recognize that unpublished opinions are not binding on this Court, and we reference these cases only because the facts are similar to those here and they involve the same legal issue. See Otey v. Commonwealth, 61 Va. App. 346, 351 n.3, 735 S.E.2d 255, 258 n.3 (2012) ("Although not binding precedent, unpublished opinions can be cited and considered for their persuasive value.").

suspiciously," and at one point the defendant wore a mask.  Id.  The pair did not enter the store together or even attempt to enter the store, nor did they make "any move toward realizing the ultimate purpose of robbery."  Id.  Although the Court held that the evidence was sufficient to prove "intent to rob the store," it concluded that the facts did not demonstrate an overt act to support attempted robbery.  Id.  In reaching this holding, the Court noted that the circumstantial evidence was "consistent only with scouting the store."  Id.  The record did not prove that the defendant and his compatriot had commenced the actual robbery or that the execution of the robbery was otherwise imminent.

In contrast to Hopson, the evidence here supports the trial court's finding that the appellant set into motion his efforts to actually commit the robbery.  The court explicitly found Morris' testimony credible.  The appellant was already wearing a sheath that "matched" the machete.  Clearly, the appellant hid the machete behind the ice machine by the entrance to the store in preparation for the robbery.  We hold that the record supported the court's conclusion that when the appellant leaned behind the ice machine, he was reaching for the machete in furtherance of an immediate robbery.  In reaching for the weapon, the appellant "moved beyond the planning state into the realm of commencing the robbery."  Rogers, 55 Va. App. at 27-28, 683 S.E.2d at 314-15.  The trial court was entitled to infer that without the quick intervention of law enforcement, consistent with the appellant's plan, he would have picked up the machete, entered the store, and confronted Morris in order to rob her of the money in the cash register.

We decline to replace our judgment for that of the trial court when the facts support the trial court's assessment.  Moreover, under settled law, the overt act need not be the last act necessary to accomplish the crime.  Id.; Tharrington, 2 Va. App. at 494, 346 S.E.2d at 339.  The act in question plainly was a "'step in a direct movement towards the commission of the offense after the preparations [were] made.'"  Jay, 275 Va. at 526, 659 S.E.2d at 320 (quoting Hicks, 86

Va. at 227, 9 S.E. at 1025). The trial judge, as the trier of fact, found, when viewed in context, that the appellant's act of reaching for the machete proved a slight overt act. We hold that this finding was supported by the evidence and was not plainly wrong.

The appellant urges us to reject the trial court's conclusion and adopt the inference that his actions were consistent with attempting to obtain money by false pretenses "or some other crime." See generally Blow v. Commonwealth, 52 Va. App. 533, 539, 665 S.E.2d 254, 257 (2008) (explaining that when a conviction is based on circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence). The law, however, precludes such a holding. "The Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence . . . ." Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993). Whether a hypothesis of innocence is reasonable is a question of fact. Cantrell v. Commonwealth, 7 Va. App. 269, 290, 373 S.E.2d 328, 339 (1988). Consequently, the fact finder's "rejection of a hypothesis of innocence" is binding on appeal unless plainly wrong, "*even* if there is 'some evidence to support' the hypothesis." Ervin v. Commonwealth, 57 Va. App. 495, 519, 704 S.E.2d 135, 147 (2011) (*en banc*) (quoting Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003)).

The trial court explicitly adopted Morris' testimony and found that the appellant intended to commit a robbery. In doing so, it rejected the appellant's argument below that a crime other than attempted robbery occurred. Although the evidence may have shown that the appellant initially intended to obtain money through false pretenses rather than violence or intimidation, he "persist[ed]" in his plan to "rob" the money in the store, despite Morris' refusal to take part in the scheme. In light of the trial court's acceptance of Morris' testimony, the appellant's theory that he attempted to obtain money by false pretenses does not flow from the evidence. Based on the facts in the record, the trial court's conclusions that the appellant's actions demonstrated his

clear intent to commit robbery as well as acts in furtherance of a robbery rather than "some other crime" were not plainly wrong and therefore cannot be disturbed on appeal. <u>See generally</u> <u>Taylor v. Commonwealth</u>, 61 Va. App. 13, 30, 733 S.E.2d 129, 138 (2012) (affirming the finder of fact's rejection of a hypothesis of innocence).

### III. CONCLUSION

We hold that under the particular circumstances of this case, the evidence was sufficient to support the trial court's conclusion that the appellant committed a direct act calculated to accomplish the robbery. Consequently, we affirm the appellant's conviction for attempted robbery.

<u>Affirmed.</u>

Humphreys, J., dissenting.

"The law of attempt is reasonably clear in the center but quite fuzzy around the edges." United States v. Doyon, 194 F.3d 207, 210 (1st Cir. 1999).

The modern doctrine of attempt can be traced back to the eighteenth century.[5]  Over time, the line between mere preparation to commit a crime and the type of act sufficient to establish an attempted offense has become increasingly blurred.  Courts have exacerbated this confusion by using a wide variety of phrases to describe the type of act required including:  a "step toward the commission of the crime;" an "act in part execution of the intent;" a "direct movement toward the commission of the offense;" an "act in furtherance of the crime;" a "substantial step toward the commission of the offense;" or "some appreciable fragment of the crime."  Wayne R. LaFave, Criminal Law § 11.4 (5th ed. 2010) (citations omitted).

Although this area of law may be difficult to navigate at times and is very fact driven, binding Virginia jurisprudence necessitates a reversal in this case.  Accordingly, I respectfully dissent from the majority opinion because it is inapposite to our holdings in Hopson v. Commonwealth, 15 Va. App. 749, 427 S.E.2d 221 (1993), and Jordan v. Commonwealth, 15 Va. App. 759, 427 S.E.2d 231 (1993).  Furthermore, contrary to the analysis of the majority, I believe the appropriate inquiry to determine whether the appellant's actions were sufficient to constitute a direct, overt act hinges on whether those actions satisfied one or more elements *necessary* to complete the underlying offense of robbery.

As the majority acknowledges, the elements of robbery are defined by the common law as "the taking, with intent to steal, of the personal property of another, from his person or in his

---

[5] Wayne R. LaFave, Criminal Law § 11.2 (5th ed. 2010) (discussing Rex v. Scofield, Cald. 397 (1784), which rejected a defendant's argument that an attempt to commit a crime was not a crime and held that "[t]he intent may make an act, innocent in itself, criminal; nor is the completion of an act, criminal in itself, necessary to constitute criminality").

- 12 -

presence, against his will, by violence or intimidation." Johnson v. Commonwealth, 209 Va. 291, 293, 163 S.E.2d 570, 572-73 (1968). "[A]n attempt is composed of two elements: the intention to commit the crime, and the doing of some direct act towards its consummation which is more than mere preparation but falls short of execution of the ultimate purpose." Sizemore v. Commonwealth, 218 Va. 980, 983, 243 S.E.2d 212, 213 (1978). "[I]f the design of a person to commit a crime is clearly shown, slight acts done in furtherance of this design will constitute an attempt." Tharrington v. Commonwealth, 2 Va. App. 491, 494, 346 S.E.2d 337, 339 (1986). Yet, the inquiry is whether those acts, however slight, were done in furtherance of the elements of robbery.

> [T]he defendant's act must reach far enough toward the accomplishment of his intention to commit the offense to amount to a commencement of the consummation or to be a step in the direct movement toward its commission; and that *some appreciable fragment of the crime must be committed* so that the crime would be completed if the defendant were not interrupted.

1 Wharton, Criminal Law and Procedure § 74 (1957) (emphasis added).

The only issue before us is whether a rational trier of fact could have found that the Commonwealth proved beyond a reasonable doubt that the appellant commenced a direct act to deprive Morris or any other occupants of the Wawa store of their personal property or property in their custody by means of violence, force, or intimidation.[6] See Pitt v. Commonwealth, 260 Va. 692, 695, 539 S.E.2d 77, 79 (2000). Applying the holding of Hopson, in my view, there is simply no evidence that the appellant's actions were anything beyond mere preparation.[7]

---

[6] Because the appellant only assigns error to the trial court finding sufficient evidence that he commenced a direct, overt act to deprive Morris of her property, the sufficiency of evidence to support the element of intent is not before this Court.

[7] This of course does not mean that the evidence does not support the appellant's guilt of another crime. The majority references the fact that the appellant was also originally charged with solicitation to commit a felony in violation of Code §§ 18.2-58 and 18.2-29, but that charge

The majority attempts to distinguish Hopson, but it is a distinction without a difference. In Hopson, this Court found the evidence insufficient to affirm the defendant's conviction for attempted robbery on facts that were even less favorable to that defendant than those found here. 15 Va. App. at 753, 427 S.E.2d at 224. In that case, police officers saw Hopson and another man "crouched by the side of a Chevron Mart." Id. at 750, 427 S.E.2d at 222. Hopson was wearing a low stocking cap and had a mask over his face. Id. The other man had previously entered the store several times to "scout it out" and was currently looking around the corner of the store and holding a revolver. Id. at 751-52, 427 S.E.2d at 222-23. Yet, neither man made a move toward the door. Id. at 752, 427 S.E.2d at 223. This Court held that this evidence, while sufficient to prove intent, only amounted to preparation to commit robbery and thus did not constitute the commencement of an overt action designed "to produce the intended result." Id.; see also Jordan, 15 Va. App. at 762, 427 S.E.2d at 233 (considering the appeal of Hopson's co-defendant which also held none of the two men's actions could be regarded as an act toward the consummation of a robbery because they were diverted from their purpose before they committed any act toward its accomplishment). While "[t]he question of what constitutes an attempt is often intricate and difficult to determine, and . . . [e]ach case must be determined on its own facts," Sizemore, 218 Va. at 985, 243 S.E.2d at 215, the facts and holdings in Hopson and Jordan are instructive.

In the light most favorable to the Commonwealth, the evidence establishes that the appellant brought a machete to the outside of the Wawa store and placed it behind an icebox. The appellant told Morris that "he had been contemplating and planning this [robbery] for a

was dismissed on a motion to strike. I believe it is helpful to note that this charge was dismissed based upon flaws in the crafting of the indictment for that offense, not because the trial court found the evidence was insufficient to support the appellant's solicitation of Morris to participate in his criminal plan.

- 14 -

while [and] that he was glad [Morris] was working overnight. He had a machete he was going to put to [her] throat" so he could rob the store. The appellant offered to split the money with Morris after her shift was done in exchange for her cooperation. Morris tried to dissuade the appellant from robbing Wawa, but he was persistent that he was going to rob the store. The appellant then walked through the store several times. Morris saw the appellant "getting ready to go for the machete" and had her manager call 911. However, when police arrived several minutes later the appellant had not removed the machete from behind the icebox or re-entered the store.

Similar to the defendants in Hopson who obtained a weapon in preparation for the robbery, the appellant brought a machete to the Wawa store. Additionally, like one of the defendants in Hopson, the appellant walked through the store several times prior to the police arriving. Similar to the defendants in Hopson who did not make a move towards the door of the convenience store, the appellant had not re-approached the door or re-entered Wawa when the police arrived. Yet, in contrast to Hopson, in which one of the defendants had a revolver actually in his grasp as they waited outside the store, the appellant never picked up the machete he had placed behind the icebox. It logically follows that like the defendants' actions in Hopson, the appellant's actions here were merely preparatory. Without evidence of a direct, overt action designed to produce the intended result, the second element required for an attempt is absent. The appellant had not retrieved the machete, nor had he re-entered or even re-approached the entrance of Wawa at the time the police arrived. Thus, the appellant was stopped short of commencing the completion of any of the elements of the crime of robbery.

When viewed in the light most favorable to the Commonwealth, the evidence clearly established that the appellant had begun *preparations* for the robbery, but mere preparations are not enough to constitute a direct, overt act. See Sizemore, 218 Va. at 983, 243 S.E.2d at 213.

- 15 -

There is no evidence in the record that the appellant commenced any direct act in furtherance of taking personal property of Wawa in Morris's custody, against her will, by force, violence, or intimidation.  The appellant had yet to commit any appreciable fragment or element of the crime.  Therefore, applying what I believe is the more logical analysis outlined above, I would hold that the appellant's actions were mere preparation because he was diverted from his purpose before he committed *any* act toward the accomplishment of the robbery.  Concluding that the trial court erred in finding sufficient evidence to convict the appellant of attempted robbery, I would reverse the judgment of the trial court.