## THE STATE *vs.* LEONARD MURPHY.

In an indictment founded upon the first clause of the supplement to the act for the punishment of crimes, approved March 1st, 1849, (*Nix. Dig.* 177, § 103,) it is not necessary to aver that the poison, drug, medicine, or noxious thing advised to be taken was actually taken or swallowed, neither is it necessary to prove it on the trial.

This cause was tried at the Atlantic Oyer and Terminer, at September Term, 1857. The jury rendered a verdict of guilty, and the counsel for the defendant, having obtained a rule to show cause why the verdict should not be set aside, and a new trial granted, the Court of Oyer and Terminer certified the case to this court for an advisory opinion.

The facts in the case, and the grounds upon which the defendant's counsel asked for a new trial, sufficiently appear in the opinion delivered in this court.

Argued at February Term, 1858, before the CHIEF JUSTICE, and Justices ELMER, POTTS, and HAINES.

*Browning*, for the defendant.

*Woodhull*, for the state.

The opinion of the court was delivered by

The CHIEF JUSTICE. The indictment upon which the defendant had been convicted is framed upon the first clause of the supplement to the act for the punishment of crimes, approved March 1st, 1849. *Nix. Dig.* 177, § 103.

The first question submitted for the consideration of the court is, whether the defendant is rightly convicted without any allegation in the indictment, or any proof upon the trial that the drug, medicine, or noxious thing, advised to be taken or swallowed, was in fact taken or swallowed by the woman. Is the taking of the drug an essen-

tial ingredient of the crime? If it is, then clearly it must be alleged in pleading and established by evidence.

The language of the enactment is, "if any person or persons maliciously or without lawful justification, with intent to cause and procure the miscarriage of a woman then pregnant with child, shall administer to her, prescribe for her, or advise or direct her to take or swallow any poison, drug, medicine, or noxious thing," * * * such offender shall, on conviction thereof, be adjudged guilty, &c. The crime of which this defendant is convicted, as defined by the statute, consists in advising, without lawful justification, a pregnant woman to take some noxious thing, with intent to cause her miscarriage. The actual taking or swallowing of the drug, by the terms of the statute, constitutes no element of the crime. The offence charged in the indictment falls clearly within the letter of the statute.

But it is insisted that the offence charged does not come within the meaning and spirit of the act, and that the legislature never intended to render criminal mere advice, accompanied by no overt act, and which led to the commission of no crime. The real prohibition intended by the statute, it is urged, extends only to the *administering*, or *causing to be administered*, some noxious drug. This is the express provision of the English statute, 9 *Geo.* 4, *ch.* 31, § 13. Its language is—if any person, with intent to procure the miscarriage of any woman, &c., "shall administer to her, or cause to be taken by her, any medicine or other thing." The language of our statute is much more comprehensive—if any person, with intent to procure the miscarriage of a woman, &c., shall administer to her, prescribe for her, or advise or direct her to take or swallow any poison, &c. To restrict the meaning and operation of this act within the narrow limits of the English statute would greatly abridge the obvious import of its terms, and could only be justified by the clearest evidence that such construction is in accordance with the intent of

the legislature, or that it is demanded by well-settled rules of interpretation.

In order to ascertain the true meaning of the statute, it is important to advert to the mischief designed to be suppressed by the act. At the common law, the procuring of an abortion, or the attempt to procure an abortion, by the mother herself, or by another with her consent, was not indictable, unless the woman were quick with child. The act was purged of its criminality, so far as it affected the mother, by her consent. It was an offence only against the life of the child. The law was so held by this court in the case of *The State* v. *Cooper*, 2 *Zab.* 52. The statute in question was cotemporaneous with that decision. An examination of its provisions will show clearly that the mischief designed to be remedied by the statute was the supposed defect in the common law developed in the case of The State *v.* Cooper, viz., that the procuring of an abortion, or an attempt to procure an abortion, with the assent of the woman, was not an indictable offence, as it affected her, but only as it affected the life of the *foetus*. The design of the statute was not to prevent the procuring of abortions, so much as to guard the health and life of the mother against the consequences of such attempts. The guilt of the defendant is not graduated by the success or failure of the attempt. It is immaterial whether the *foetus* is destroyed, or whether it has quickened or not. In either case the degree of the defendant's guilt is the same. The only gradation recognized by the statute in the defendant's guilt, is made to depend upon the effect of the act upon the mother, viz., whether she died in consequence of it.

Nor does the statute make it criminal for the woman to swallow the potion, or to consent to the operation or other means used to procure an abortion. No act of hers is made criminal by the statute. Her guilt or innocence remains as at common law. Her offence at the common law is against the life of the child. The offence of third persons, under the statute, is mainly against her life and

State v. Murphy.

health.  The statute regards her as the victim of crime, not as the criminal; as the object of protection, rather than of punishment.

Viewing the statute in this light, how can the swallowing of the potion by the woman affect the question of the defendant's guilt?  He is not to be regarded as an accomplice in crime with the woman, much less as a mere accessory to a crime in which the woman is the principal.  The swallowing of the potion by her is not a crime.  The third party, who administers the potion, or who instigates its being taken, is the only offender recognized by the statute. Advising to take the potion, is the overt act made criminal by the statute.

Mere words do, at the common law, constitute such overt act as amounts to an attempt to commit a crime.

The solicitation to commit a crime is an act indictable at common law.  *The King* v. *Higgins*, 2 *East* 17 ; 1 *Bishop's Cr. Law*, § 525.

So statutes may, and frequently do, make crime consist in mere persuasion, counsel or advice, irrespective of the question whether the advice is acted upon.  Instances of this kind are afforded by the statute against embracery, (*Nix. Dig.* 165, § 29,) and by the act to regulate elections. *Nix. Dig.* 223, § 51.

Under the statute, the defendant's guilt is complete by giving the advice with the intent specified in the act, and it is immaterial whether the advice be followed or not.

But it is further urged that the context shows that it was not the design of the statute to make the mere giving of advice indictable.  The act provides that every person aiding and assisting such offender shall also be guilty; and it is asked, how can a person aid or assist another in the mere giving of advice ; and how, it is asked again in reference to another clause of the statute, can the woman die in consequence of advice, if the drug be not swallowed? These illustrations serve to show that there is inaptness in the expressions, and a want of precision in the phrase-

ology of the statute. But they interpose no serious obstacle to its rational interpretation, nor are they sufficient so defeat the obvious design of the legislature clearly expressed. It may be remarked, in passing, that the phrase, every person aiding and assisting such offender, most probably, was intended to refer only to the next preceding clause, which relates to the use of instruments, and that it has no reference whatever to the first clause of the act. That this is so, and that the difficulty may be produced by false pointing, may be seen by reference to the Massachusetts statute, of which ours is manifestly a copy, though an inaccurate one.

It was further suggested, rather than urged upon the argument, that the entire statute is nugatory, inasmuch as, by its terms, it does not declare the person administering the drug, or using the instrument, to be guilty of any offence whatever, but denounces a penalty only upon the person assisting such offender. The structure of the sentence is clearly inaccurate and ungrammatical, but its meaning is sufficiently intelligible. The person administering the drug and the person using the instrument, as well as the person aiding and assisting, are, on conviction, to be adjudged guilty of a misdemeanor.

The offence is properly described in the indictment. The evidence was sufficient to warrant the conviction. There is no error in the instruction given by the court to the jury, and the effect of the evidence is fairly submitted to their determination.

The conviction is right, and the Court of Oyer and Terminer should be advised accordingly.

CITED in *State* v. *Hyer*, 10 *Vr.* 600.