# Smith *versus* The Commonwealth.

1. An attempt to commit a misdemeanor is a misdemeanor.

2. Where an act is done which unequivocally leads to crime, it can be punished, either as a consummate crime or as an attempt at crime; but until an overt act is committed, the law will not detect and punish the criminal intent.

3. It is not indictable "to solicit, incite and endeavor to persuade" a married woman to commit fornication or adultery.

4. Precedents are evidence of the law.

5. *Solicitation* to commit an offence is not *attempt*.

[Smith *v.* The Commonwealth.]

January 31st 1867.  Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ.  READ, J., sick.

Certiorari to the Court of Quarter Sessions of *Union county.*

This was a prosecution against William E. Smith for soliciting a woman to commit adultery.

The bill, which was found September 20th 1864, contained two counts :—

1. That the defendant " with force and arms, intending to vitiate and corrupt the morals of one Rachael Dorman, a married woman having a husband living, and to stir up and excite in her mind lewd and unchaste desires and inclinations, on the day and year aforesaid, at the county aforesaid, did unlawfully and wickedly solicit and incite, and endeavor to persuade the said Rachael Dorman to permit and suffer him, the said William E. Smith, an unmarried man, then and there wickedly to commit the crime of fornication with the said Rachael Dorman, to the great displeasure of Almighty God, to the great damage of the said Rachael Dorman," &c.

2. That the defendant " with force and arms, intending to vitiate and corrupt the morals of one Rachael Dorman, she being a married woman and having a husband living, and to stir up and excite in her mind lewd and unchaste desires and inclinations, on the day and year aforesaid, in the county aforesaid, did wickedly and unlawfully solicit, and incite and endeavor to persuade the said Rachael Dorman, she being a married woman having a husband living, then and there *felonously* and wickedly to commit the crime of adultery with the said William E. Smith, he being an unmarried man and not her husband, to the great displeasure of Almighty God, to the great damage of the said Rachael Dorman," &c.

The defendant pleaded not guilty and was convicted.

A motion was made for a new trial and in arrest of judgment, on the ground that the indictment did not charge an indictable offence.  The court below, the President Judge dissenting, overruled the motion, and the defendant was sentenced to pay a fine of one dollar and the costs.

The error assigned was that the court erred in pronouncing sentence upon the defendant because the indictment did not charge a criminal offence and consequently would not support a conviction.

*J. C. Bucher* and *W. C. Lawson,* for plaintiff in error, cited 3 Shars. Bl. C. 139 ; Hawkins 74 ; Pierson's Case, 1 Salk. 382 ; Gallisand *v.* Rigaud, 2 Ld. Raym. 809 ; Shannon *v.* Commonwealth, 2 Harris 226 ; State *v.* Avery, 7 Conn. R. 266 ; Whart. Crim. Law 2696.

[Smith v. The Commonwealth.]

*W. Van Gezer* and *G. F. Miller*, for Commonwealth, defendant in error.—Commonwealth *v.* Taylor, 5 Binn. 277 ; 1 Russ. on Crimes 45, 46 ; Am. Crim. L. 766 ; State *v.* Keyes, 8 Verm. 57 ; Commonwealth *v.* Tibbs, 1 Dana 524 ; State *v.* Avery, 7 Conn. R. 267 ; 2 Chitt. Cr. L. 49 ; Shannon *v.* Commonwealth, 2 Harris 226.

The opinion of the court was delivered, May 13th 1867, by

WOODWARD, C. J.—An attempt to commit a misdemeanor is a misdemeanor, whether the offence is created by statute, or was an offence at common law. These were the words of Baron Parke in the case of Rex *v.* Roderick, 7 C. & P. 795, delivered in the year 1837. They have been adopted by the compilers on criminal law : 1 Russ. on Crimes 46 ; 1 Arch. Crim. Plead. & Ev. 19 ; Wharton's Crim. Law 79, 873.

Long before 1837, to wit, in 1801, it was held in The King *v.* Higgins, 2 East 5, that to solicit a servant to steal his master's goods, is a misdemeanor, though it be not charged in the indictment that the servant stole the goods, or that any other act was done except the soliciting and inciting. This was the case of an unsuccessful solicitation to commit a felony, and it is authority for nothing more than that such solicitation is indictable as a misdemeanor, though the language of the judges, and especially of Grose, J., went so far as to intimate that a solicitation to commit a misdemeanor was indictable. "All these cases prove," said the learned judge, "that inciting another to commit a misdemeanor is itself a misdemeanor, *a fortiori*, therefore it must be such to incite another to commit felony."

No fault can be found with his conclusion if his premises be true ; but "all these cases," to which he referred himself, were cases rather of *attempts* than of mere *solicitations* to commit misdemeanors. Thus Rex *v.* Scofield, Cald. 397, was an attempt by a man to set fire to his own house—at that time the burning of one's own house being only a misdemeanor in England, but since made a felony by statute. The act done in that case was setting a lighted candle under the stairway, and the question was whether the intent was to burn the house.

And in Rex *v.* Vaughn, 2 Burr. 2494, the defendant attempted to bribe the Duke of Grafton, then a cabinet minister, to give the defendant a place in Jamaica, and it was indicted as an *attempt*. The King *v.* Plympton, 2 Ld. Ray. 1377, was another case of attempted bribery—the offer of money to a member of a corporation for his vote.

Rex *v.* Johnson, 2 Show. 1, another of the authorities relied on by the judges in Higgins' case, was nothing less than subornation of perjury, the actual putting of money into a chest to be paid to a witness upon the event of a verdict. And such, indeed,

[Smith *v.* The Commonwealth.]

was the unreported case mentioned by the judges as having occurred before Baron Adams, at Shrewsbury, where the indictment charged an attempt to suborn one to commit perjury.

These were the cases upon which Higgins' case was ruled, and no doubt they were ample authority for the point ruled there, but do they sustain, or tend to sustain the *obiter dictum*, that merely inciting another to commit a misdemeanor is indictable ? That depends upon another question, whether there is any distinction in law and reason between an *attempt* to commit a crime and the *inciting* or *soliciting* another to commit crime ?

Long before any of the above cases were ruled, it had been decided in Pierson's Case, 1 Salk. 382, that one may be indicted for keeping a bawdy-house, but a bare solicitation of chastity is not indictable, and this has passed into the text of Hawkins, ch. 74, and perhaps of other writers on criminal law. Here the distinction betwixt attempt and solicitation is sharply drawn. Keeping a bawdy-house is an organized temptation to adultery, and a preparation of all facilities for the consummation of the crime. It is an attempt, a deliberate effort to promote the crime, of the most unqualified significance ; but so many equivocal words, looks and gestures might be construed into solicitation, that it would be difficult to define the crime when dependent on such evidence. What expressions of the face or double *entendres* of the tongue are to be adjudged solicitation ? What freedoms of manners amount to this crime ? Is every cyprian who nods or winks to the married men she meets upon the sidewalk indictable for soliciting to adultery ? And could the law safely undertake to decide what recognitions in the street were chaste and what were lewd ? It would be a dangerous and difficult rule of criminal law to administer.

Where an act is done which unequivocally tends to crime, the law can lay hold of it and punish it, either as a consummate crime or as an attempt at crime, as, for instance, renting a house for purposes of prostitution, as in The Commonwealth *v.* Harrington, 5 Pick. 26, but until something has been done which may be called an overt act, it seems unreasonable that the law should be required to detect and punish the criminal intent. This court said so with great emphasis in the case of Shannon and Nugent *v.* Commonwealth, 2 Harris 226, where it was held that conspiracy between a man and woman to commit adultery was not indictable. Conspiracy to commit adultery looks much more criminal than unsuccessful solicitation. In Regina *v.* Martin, 9 C. & P. 215, Justice Patteson hit the distinction when he said, "It is perfectly clear that every attempt, not every *intention*, but every *attempt* to commit a misdemeanor is a misdemeanor." To the same effect are the cases collected in Whart. Crim. Law 873, which have been decided under the statutes that exist in several

[Smith v. The Commonwealth.]

states for the punishment of attempts to commit crimes. The attempt can only be made by an actual, ineffectual *deed*, done in pursuance of, and in furtherance of the design to commit the offence. I would have supposed that the case of Rex *v.* Butler, 6 C. & P. 368, would have fallen within this rule, and yet it was held there that a count was not good, which charged that the defendant "did attempt to assault the said Sarah Vernon by soliciting, and persuading, and inducing her to lie down upon a certain bed in the dwelling-house of him, the said J. B., there situate, and getting upon the body of her, the said S. V.," &c., &c. This was soliciting and persuading with overt acts, that clearly manifested the guilty intent, and if solicitation with such indubitable acts be not indictable, it is quite necessary to conclude that mere solicitation without any overt act is not indictable. It is easy to say that solicitation is an attempt, but a study of the cases will show that every case of attempt has included something more than mere solicitation, and the slightest reflection will persuade any observant man that a rule of law which should make mere solicitation to fornication or adultery indictable would be an impracticable rule, one that in the present usages and manners of society would lead to great abuses and oppressions. The morality of the law cannot undertake to regulate the thoughts and intents of the heart. The best it can do is to punish open acts of lewdness and repress indecent assaults. For the rest it must trust the people to the refining influences of Christian education.

It is time now to turn to the case upon the record. It is an indictment in two counts, both of which charge that the defendant did "solicit, incite and endeavor to persuade" a married woman to commit fornication and adultery. Those are the efficient words, and contain the substance of the charge. There are plenty of adverbs added, but they imply only legal inferences from what is charged. In the 2d count the offence is laid as "*felonously*" done, but as adultery, even when consummate, has never been treated as a felony in Pennsylvania, it was nonsense to rank solicitation to the crime higher than the crime itself. If the conviction were sustained this word would have to be rejected as surplusage.

It is observable that no assault or overt act is charged—no writing, or picture, or indecent exposure of person is alleged, nothing indeed is suggested but mere solicitation. And the manner of this is not even hinted. It may have been by direct request, by innuendo, by argument, founded, as has sometimes happened, upon scriptural texts and analogies, or it may have been by gay and frivolous anecdote or appeal. Possibly nothing was *said*, but only impure thoughts insinuated by looks or gestures. What evidence shall be sufficient to sustain such a charge ? Nothing equivalent to an attempt is alleged, and, of course, the evidence

[Smith *v.* The Commonwealth.]

would fall short of an attempt, and what would it consist of? We have no precedents for such a case, and as precedents are evidence of the law, the lack of them implies that the law has never undertaken to redress such an indefinite offence as is charged here. The authorities to which I have adverted yield no support to the indictment unless we confound legal distinctions and treat everything which may be considered as a solicitation of chastity an attempt upon chastity. In a high moral sense it may be true that solicitation is attempt, but in a legal sense it is not. And the law is as likely to be distorted by pressing it into extravagant reforms of the manners of men and women, as it is by too loose an administration.

The diligence of counsel has succeeded in finding but one case, that of State *v.* Avery, 7 Conn. R. 267, that goes to support the indictment. That was an information in the nature of an indictment for writing and sending to a married woman a scandalous letter, inviting her to an assignation for adulterous purposes. The court sustained the prosecution as for a libel, but added, *arguendo*, that if the letter were not a libel it was indictable as a solicitation to commit a felony, and for this Higgins's Case was cited and relied upon. By the Connecticut statute adultery is a felony, or was at the date of that case. That, then, in principle, was Higgins's Case over again, and is distinguishable from the solicitation charged here, which was not to commit a felony. On another ground it is distinguishable also, for the sending the letter was an overt act which might be considered sufficient to raise the offence to an attempt to debauch a married woman, which we agree is indictable.

Various forms of malicious mischief have been held indictable in Pennsylvania, and gross or obscene language publicly uttered in the streets has been indicted, but in all such cases the overt act, not the guilty intent, constituted the offence.

Nothing being alleged in this case which can be thought to amount to an attempt upon the chastity of the wife of the prosecutor, the judgment is reversed.

AGNEW, J., dissented.