## Commonwealth v. Mulhern

*Gilford Satzberg*, for Commonwealth.
*Abraham Levin*, for defendants.

SLOANE, P. J., July 3, 1963.—Defendants were charged in two indictments with violation of the Act of December 8, 1959, P. L. 1714, sec. 1, 18 PS §4414.1, in that on September 7, 1962, and on September 14, 1962, they "unlawfully did telephone one Ellen Whelan and did address to and about the said Ellen Whelan lewed [sic] and lascivious and indecent words and language." The act as applicable to this case provides:

"Whoever telephones . . . and addresses to or about such other person any lewd, lascivious or indecent words or language . . . shall be deemed guilty of the misdemeanor of being a disorderly person. . . ." [1]

Fresh pursuit seems necessary since but one utterance of the act has been given, and this came about on a motion to quash an indictment on the ground of unconstitutionality. That portion of it, here involved,

---

[1] No charge was made under the second portion of the Act which provides:

"(W)hoever anonymously telephones another person repeatedly for the purpose of annoying, molesting or harassing such other person or his or her family, shall be deemed guilty of the misdemeanor of being a disorderly person. . . ."

was held valid: Commonwealth v. Lewis, 21 Lawrence 189.

The facts are these:

The prosecutrix, Ellen Whalen, a girl 18 years of age, received a telephone call at her home, late in the afternoon of September 7, 1962. The caller identified himself as Bill Reynolds of the Hamilton Court Apartments; he said he knew of Ellen from a girl named Kathy.[2] This is Ellen's testimony:

"He asked me if I had looked for a job and I said, 'Well not yet.' He asked me if I was interested in modeling and I said, 'Oh, sure.' He said 'Well you can make $45 to $50 a night, at night work.' I figured models didn't have to work at night, you know. So he said—well I just told him to forget it, and that was it. He told me that it was in the hustling business, and it would involve me to lay down and things of that sort. The conversation ended like that. I just said I wasn't interested."

Ellen did not know who called.

The following Monday about six o'clock in the afternoon, the same individual again contacted Ellen by telephone. The substance of that conversation was as follows:

"He said, 'Are you interested yet?' and I said no. Then he said, 'Why not? Isn't there enough money in it for you?' I said that I wasn't interested in the money, that I just was not interested. I said, 'Don't bother calling me. If I change my mind, I will call you. Are you still at Hamilton Court?' He said yes, he was."

On September 14, 1962, another call came to Ellen's home. The telephone was answered by an uncle who instructed the caller to telephone later. By this time Ellen's mother had determined to notify the authori-

---

[2] In a subsequent call the source was given as a girl named Mary Anne. Both alleged acquaintances were apparently unknown to the prosecutrix.

ties. The return call, a half-hour later, was answered by Ellen, She said she was definitely interested and asked "Reynolds" to call her a little later. This latter request grew out of an attempt to reach the police and to plan to spot the caller. In the final call a meeting was arranged. Officers apprehended defendants at the site of the meeting. There was evidence presented in behalf of defendant Mulhern, that he could not have made the calls inasmuch as he was at work at the times the calls were made. Defendants testified that their appearance at the place of the meeting was sheer coincidence, and this might or might not be so. But since we believe the Commonwealth's case failed to establish the elements of the offense charged, we need not evaluate the matters of defense.

The legislature by the Act of May 28, 1937, P. L. 1019, 46 PS §551, et seq., provided the guides to be used by courts in the interpretation and construction of statutes. Clearly the touchstone of construction is the ascertainment of the intention of the legislature. We have tried to ascertain that intention.

The Act of 1959, supra, as originally introduced, referred only to the use of indecent language in telephonic communications. It was not until passage by the House, and on second reading in the Senate that an amendment was introduced to include annoying, molesting or harassing communications. The circumstances of enactment indicate that the legislature was dealing with two separate types of situation which it deemed offensive. For that reason it seems reasonable to assume that the first portion of the act was enacted in response to the dissent in Commonwealth v. Mochan, 177 Pa. Superior Ct. 454.

In Mochan, the majority of the Superior Court held that a conviction could be had under common law where an accused made telephone calls using "filthy, disgusting and indecent language," and inferences

made that a member of the household was a "woman of ill repute and ill fame," the caller intending to "blacken the character and reputation" of the recipient of the calls. The dissents would hold that it was for the legislature to declare what acts were injurious to public morality; it was to the dissents that the legislators evidenty responded.

Thus upon consideration of the circumstances of enactment and the facts of Mochan together with the legislative mandate that penal provisions are to be strictly construed,[3] we must hold that no offense was committed in this case. This conclusion is based on two grounds. First, the language of the enactment refers only to *words* or *language* which are lewd, lascivious or indecent. Comparative legislation in other jurisdictions specifically include *suggestions* or proposals which are obscene, lewd, lascivious or indecent, in addition to base words and language. See, e.g., Delaware Code of June 8, 1955. Tit. 11 §758. Secondly, this omission is significant in light of the facts and opinion in Mochan. In that case the evidence showed that the accused "not only suggested intercourse with her but talked of sodomy as well, in the loathsome language of that criminal act . . .," and in indicative dictum the court pronounced, page 459: "To endeavor merely to persuade a married woman to commit adultery is not indictable: Smith v. Commonwealth, 54 Pa. 209. The present defendants' criminal intent was evidenced by a number of overt acts beyond the mere oral solicitation of adultery. The vile and disgusting suggestions of sodomy alone and the otherwise persistent lewd, immoral and filthy language used by the defendant, take these cases out of the principle of the Smith case."

At most the evidence in this case shows a solicitation to commit fornication. There is no suggestion of

---

[3] See 46 PS §558.

sodomy, nor is there any reference to the use of filthy language. Though indeed the nature and purpose of the calls is reprehensible it did not meet the purpose of the act.

We do not hold that a solicitation to fornicate may never be in violation of the act. Obscenity is a relativistic concept depending on the mode [4] and manner of expression as well as the matter expressed. Although "sex and obscenity are not synonymous," [5] where sexual expression is such that "customary limits of candor in description or representation" [6] are overreached, clear violations of the act would be involved.

Freedom of expression and communication have certain bounds which a legislature may delineate. Here our general assembly has properly prescribed certain limitations in the interest of protecting every citizen's right to privacy, which limits have not been transgressed in this case.[7] For a court, the task of weighing conflicting liberties is difficult; accomodation between them is still more difficult, but as Justice Frankfurter truly noted that accomodation "has been, and ever will be, indispensible for a democratic society." [8]

As to defendant McLaughlin the only evidence is that he was in the car with the other defendant, Mulhern. And certainly we cannot attach vicarious criminal responsibility to McLaughlin by his presence in the car. As to defendant Mulhern we do not excuse his

---

[4] A relativistic approach to the regulation of expression and communication has been utilized in many Supreme Court decisions. A clear enunciation is to be found in Justice Jackson's concurring opinion in Kovacs v. Cooper, 336 U. S. 77, 97.

[5] Roth v. United States, 354 U. S. 476, 487.

[6] Roth, ibid., note 20 approving the definition of obscenity in §2.07.10(2) Model Penal Code, T. D. No. 9 (1957), being section 251.4 of the A. L. I., Final Draft, Model Penal Code.

[7] See Emerson, Toward a General Theory of the First Amendment, 72 Yale L. J. 877, 926.

[8] Kovacs v. Cooper, 336 U. S. 77, 89 (concurring opinion).

roguish conduct; we consider it reprehensible. But he does not come within the purview of the act and our finding or verdict accordingly must be not guilty.