COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Raphael, Lorish and Frucci
Argued at Arlington, Virginia


RAY ALLEN ATKINS

                                                              OPINION BY
v.        Record No. 0684-24-4                    JUDGE STEVEN C. FRUCCI
                                                              AUGUST 12, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PAGE COUNTY
Clark A. Ritchie, Judge

Caleb J. Routhier (Miller, Earle & Shanks, PLLC; Helm Law PLLC,
on brief), for appellant.

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the Circuit Court of Page County convicted Ray Allen Atkins of

attempted incest with his "own child or grandchild."[1]  Atkins asserts that the evidence was

insufficient to support his conviction and that the circuit court erred in allowing the victim to

testify, in denying and in granting various jury instructions, in permitting the Commonwealth to

make certain statements during closing argument, and in denying his motion to quash the

indictment.  For the following reasons, we reverse the conviction for attempted incest.

---

[1] Atkins was also charged with solicitation to commit incest, solicitation to commit
sodomy of a family member, and attempted sodomy "upon or by" a family member.  However,
the solicitation to commit incest charge was nolle prosed and the solicitation to commit sodomy
of a family member charge was dismissed prior to the jury trial.  The jury found Atkins not
guilty of attempted sodomy "upon or by" a family member.

BACKGROUND[2]

In September 2022, Atkins offered his adult granddaughter, G.A.,[3] some soda if she would come over to his house to help him. While there, G.A. used her cellphone to record two conversations she had with Atkins that day.[4] During both conversations, Atkins was seated in a chair at a table outside of his house. During one of the conversations, Atkins asked G.A. for a "blow job" and to have sex with him.[5] Atkins told G.A. to "give [him] some pussy." Though G.A. responded with "I can't do that pawpaw," Atkins continued telling G.A. that "all [she] gotta do is close [her] eyes and say ahh." Again, G.A. responded, "I ain't doing that." Atkins then said, "I thought you were gonna give it to me." G.A. replied, "I can't do that pawpaw." To which Atkins responded with, "If you can't do it, you can't do it, but I can't give you no more money."

Atkins then attempted to persuade G.A. by: (1) saying "I bet I'll nut before I even get it in you" and "I want some so badly," (2) telling G.A. he would not give her any more money and reminding her that he recently had given her some money, and (3) asking G.A. if she wanted to

_____

[2] "Consistent with the standard of review when a criminal appellant challenges the sufficiency of the evidence, we recite the evidence below 'in the "light most favorable" to the Commonwealth, the prevailing party in the trial court.'" *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022) (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). This standard "requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

[3] We use initials, rather than names, to protect the privacy of the victim.

[4] The recordings were videos, were entered into evidence by the Commonwealth jointly as Commonwealth Exhibit 1, and played before the jury. Though the conversations happened on the same day, it is unclear from the record which conversation happened first. The first video was four minutes and fifty-seven seconds long, and the second video was thirty-two seconds long.

[5] When later shown the recordings by Detective Smoot of the Luray Police Department, Atkins agreed he was the person in the video.

- 2 -

"let [him] plug that thing for sixty" and then offering her a fifty-dollar bill and a ten-dollar roll of quarters. G.A. repeatedly told him that she would not do it. During one of her denials, Atkins interjected and said "well if you don't want to do it, you don't have to. If you don't want to do it, you don't have to. I'm not giving you any money, though. I ain't buying no sodas, neither." As he said this, Atkins began counting coins. Atkins stated, "You give me some pussy, I'll take care of you."

In the second recorded conversation, Atkins said to G.A., "let me put it in you. Let me put it in you." G.A. replied, "I can't do that pawpaw." Atkins responded with "it's only gonna take ten to twelve minutes and you earn sixty dollars." When G.A. denied him again, he told her, "Okay, well I can't give you more money if you won't give me no pussy."

Later, Atkins was charged with attempted sodomy of a family member and attempted incest of a child or grandchild. After the Commonwealth's case-in-chief at trial, Atkins moved the circuit court to strike the evidence as insufficient. He argued, in part, that the evidence was insufficient for the jury to find: (1) that the offense occurred during the date range set forth in the indictment; and (2) that he committed a direct act in furtherance of the attempt. The circuit court denied his motion to strike. Following, the jury returned verdicts of guilty of attempted incest with child or grandchild and not guilty of attempted sodomy of a family member. After the circuit court entered a judgment in accordance with the verdict, Atkins moved the circuit court to set aside the verdict due to jury instruction issues, statements made during closing arguments, and insufficient evidence. The circuit court denied the motion. Atkins appeals.

ANALYSIS

Atkins contends, in part, that the evidence was insufficient to sustain his conviction because it did not show that he committed an overt act in the commission of incest. "In such cases [as this], '[t]he Court does not ask itself whether *it* believes that the evidence at the trial

- 3 -

established guilt beyond a reasonable doubt." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (second alteration in original) (quoting *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"An attempt to commit a crime is composed of two elements: (1) The intent to commit it; and (2) a direct, ineffectual act done towards its commission." *Fletcher v. Commonwealth*, 72 Va. App. 493, 506 (2020) (quoting *Haywood v. Commonwealth*, 20 Va. App. 562, 565 (1995)). "The direct but ineffectual act is commonly referred to as an 'overt act.'" *Jones v. Commonwealth*, 70 Va. App. 307, 318 (2019) (en banc) (quoting *Jay v. Commonwealth*, 275 Va. 510, 525 (2008)). "The overt act requirement distinguishes an attempt to commit a crime from 'mere preparation' to do so, which is not a criminal offense." *Id.* "[T]he 'overt act' must be an action that begins (commences) the execution (consummation) of one or more elements of a crime but does not complete all of them." *Id.* at 319. While there must be "direct overt acts well calculated to accomplish the result intended," the action need not be the last proximate act necessary to complete the crime of incest. *Jay*, 275 Va. at 526 (quoting *Granberry v. Commonwealth*, 184 Va. 674, 678 (1946)). However, the act "must approach sufficiently near to [the crime] to stand either as the first or some subsequent step in a direct movement towards the commission of the offence after the preparations are made." *Id.* (quoting *Hicks v. Commonwealth*, 86 Va. 223, 227 (1889)). "[P]reparation ends and attempt begins once an overt

act commencing an element of the intended crime is initiated with the requisite intent." *Jones*, 70 Va. App. at 327. Under Code § 18.2-366(B), "[a]ny person who engages in sexual intercourse with his . . . granddaughter . . . is guilty of a Class 5 felony." Thus, in the case at hand, the Commonwealth was required to prove that Atkins intended to engage in sexual intercourse with G.A., his granddaughter, and that he committed an action that began the execution of sexual intercourse with his granddaughter.

While the evidence certainly supports a finding that Atkins intended to engage in sexual intercourse with his granddaughter, it does not support that he committed an action that went beyond mere preparation and that started the execution of the crime. The evidence showed that Atkins invited G.A. over to his residence where Atkins then asked G.A. to "[g]ive him some pussy." After she said no, Atkins attempted to persuade G.A. numerous times to have sex with him by offering G.A. money and threatening to no longer provide her any further financial support and to withhold previously promised goods if she denied him. While doing so, Atkins did not move closer to G.A., touch G.A., remove any clothing, or make any other kind of movement or act to initiate sexual intercourse.[6] "The difference between preparation and attempt lies between an act in preparation of a crime—one yet to take place or commence—and an act in the commission of a crime." *Jones*, 70 Va. App. at 329. "Preparation alone is not enough, there must be some appreciable fragment of the crime committed, it must be in such progress that it will be consummated unless interrupted by circumstances independent of the will of the attempter, and the act must not be equivocal in nature." *Lewis v. Commonwealth*, 15 Va. App. 337, 340 (1992) (quoting *People v. Buffum*, P.2d 317, 321 (Cal. 1953)). Even viewed in the light most favorable to the Commonwealth, the evidence here does not support a finding that Atkins's

---

[6] Additionally, as the Commonwealth acknowledged at oral argument on appeal, it would be "left up to supposition as to what all events would actually have happened had she consented."

direct actions proceeded beyond merely preparing to commit incest. As the evidence is insufficient to find Atkins committed an overt act, it is insufficient to support his conviction for attempted incest.[7]

CONCLUSION

Accordingly, we reverse Atkins's attempted incest conviction and dismiss the indictment.

*Reversed.*

---

[7] As we are reversing the attempted incest conviction, we decline to address Atkins's remaining assignments of error. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (stating that "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

Raphael, J., concurring.

I join the Court's opinion in full. I write separately to explain why I find this case to be difficult and why I conclude, nevertheless, that the Court properly reverses the conviction.

First the difficulty. The evidence, viewed in the light most favorable to the Commonwealth, leaves no doubt that Ray Allen Atkins intended to commit incest with his adult granddaughter if she agreed to have sex with him. The proof is so clear that the evidence fails to suggest any reasonable hypothesis of innocence. We have previously held that "the victim's refusal to cooperate . . . does not . . . absolve a defendant of attempting to commit a crime." *Rogers v. Commonwealth*, 55 Va. App. 20, 29 (2009). So why should the Court set aside his conviction for attempted incest?

The answer stems from the constraints that our caselaw has imposed on the overt-act requirement for attempt crimes. While Virginia has codified the punishment for attempts to commit felonies, *see* Code §§ 18.2-25 to -28, "what constitutes an attempt must be ascertained from the common law." *Johnson v. Commonwealth*, 209 Va. 291, 293 (1968). After thoroughly canvasing Virginia common law surrounding the overt-act requirement, we said in 2019 that the evidence must "objectively demonstrate[] 'the commencement of the consummation' or, stated another way, the beginning of the commission of the intended crime itself." *Jones v. Commonwealth*, 70 Va. App. 307, 325 (2019) (en banc) (quoting *Jay v. Commonwealth*, 275 Va. 510, 526 (2008)). And while "an act constituting an attempt can be 'slight,' . . . an overt act constituting an attempted crime must have linkage to an element of the offense, rather than merely the overall criminal intent." *Id.* at 324-25.

Criminal incest by a grandparent with the grandchild requires "sexual intercourse." Code § 18.2-366(B). Although Atkins's words showed that he intended to have sex with his

- 7 -

granddaughter, Atkins did not commence the consummation of sexual intercourse, such as by removing his clothes, exposing himself, or touching her.

That fact distinguishes this case from *Rainey v. Commonwealth*, 169 Va. 892 (1937), where the Court found the evidence sufficient to convict Rainey for attempted-statutory rape of a 14-year-old girl despite that she, like the victim here, declined sex.[8] Rainey testified that "without her consent he would not have had intercourse with her." *Id.* at 894. Still, the Court found "overt acts" that "amounted to the 'commencement of the consummation' of statutory rape." *Id.* at 895. The victim testified that Rainey's "privates were exposed. I was lying down. We had not done anything. He was just starting." *Id.* at 894. In this case, by contrast, Atkins did not engage in similar physical acts to commence intercourse with his granddaughter.

While Atkins surely solicited his granddaughter for sex, our caselaw makes clear that solicitation alone will not satisfy the overt-act requirement for criminal attempt. In *Hicks v. Commonwealth*, 86 Va. 223 (1889), the Court held that the defendant could not be convicted of attempted poisoning despite that he delivered strychnine to an intermediary and offered a reward if she spiked the victim's coffee. *Id.* at 224, 230. The intermediary "testified that she never agreed to administer the poison, and never intended to do so." *Id.* at 225. The Court found that the solicitation of the intermediary did not qualify as an overt act "because it is not such an act as is likely, in the natural course of events, to bring about the result desired." *Id.* at 230. "On the contrary, the presumption in such a case is the other way, since a criminal intent on the part of the person to whom the poison is delivered, is not to be presumed."[9] *Id.*; *see also Kilpatrick v.*

_____

[8] The Court remanded the case for a new trial on other grounds. 169 Va. at 896.

[9] We distinguished *Hicks* in *Ashford v. Commonwealth*, 47 Va. App. 676 (2006), upholding the defendant's conviction for attempted murder for hire. We explained that "[s]oliciting an accomplice is not an element of poisoning whereas hiring a hit man is an overt act in furtherance of murder for hire, and it is an essential element of the offense." *Id.* at 683.

*Commonwealth*, 73 Va. App. 172, 195 n.10 (2021) ("The act of solicitation is not an 'attempt' in the legal sense of the word." (citing *Hicks*, 86 Va. at 229)). Likewise, Atkins's soliciting his granddaughter for sex was not an overt act under *Hicks* because she declined his invitation, and it could not be presumed that she would do otherwise.[10]

Importantly, when we speak here of the "common law" of criminal attempt, it is not the "common law of England" that became the law of Virginia upon our founding and that remains the law today unless changed by the General Assembly. Code § 1-200. The correct date for the reception of English common law is "either 1776 or 1792, based on either the original [common-law-reception] ordinance or its reenactment 16 years later." *Dodson v. Kleffman*, 84 Va. App. 174, 196-97 & nn.17-18 (2025) (Raphael, J., concurring). Although our appellate courts have not yet decided which date is correct, *id.*, the choice does not matter here.

English cases before 1792 simply did not address whether solicitation could qualify as an overt act for criminal attempt. English courts did not address that question until 1801, when the Court of King's Bench upheld a defendant's conviction for attempted theft based on the defendant's having solicited a servant to steal "twist" from his master. *Rex v. Higgins*, 2 East 5, 102 Eng. Rep. 269 (K.B. 1801). The defendant argued that "[a] bare solicitation or incitement of another to commit an offence is not indictable, unless it be accompanied by some overt act towards carrying the intent into execution." *Id.* at 6, 102 Eng. Rep. at 270. The Crown responded that "the incitement or solicitation is an act; it is an attempt to procure the commission

---

[10] It is important to distinguish between (1) whether Atkins's solicitation of his granddaughter was an overt act sufficient to support his attempted-incest conviction from (2) whether he could have been convicted separately for soliciting his granddaughter to commit incest. Only the first question is presented here because the Commonwealth nolle prossed the charge for solicitation to commit incest. The Court thus does not need to address whether Atkins was shielded from prosecution for solicitation on the ground that the incest statute criminalizes only the grandparent's having intercourse with the grandchild, not the other way around. *See* Code § 18.2-366(B).

of a felony by the agency of another person." *Id.* at 11, 102 Eng. Rep. at 272.  The court sided with the Crown.  Lord Kenyon wrote, "is there not an act done, when it is charged that the defendant solicited another to commit a felony?  The solicitation is an act." *Id.* at 17, 102 Eng. Rep. at 274 (Kenyon, C.J.).  Similarly, Justice Grose said that "in soliciting [the servant] to commit the felony, the defendant did an act towards carrying his intent into execution.  It is an endeavour or attempt to commit a crime." *Id.* at 21, 102 Eng. Rep. at 275.  Justice Le Blanc agreed: "this is a charge of an act done; namely, an actual solicitation of a servant to rob his master." *Id.* at 22-23, 102 Eng. Rep. at 276.

Since the common law of England before 1792 did not dictate that Virginia follow the English rule adopted in *Higgins*, our Supreme Court in 1889 was free to go its own way in *Hicks*.  Still, it is notable that *Hicks* adopted a position that, by that time, divided the States.

American courts before 1864 had decided criminal-attempt cases consistently with *Higgins*, holding that solicitation could qualify as an act to support a criminal-attempt conviction.[11]  In the earliest case in that sequence, the Connecticut Supreme Court explained that the "solicitation is an act." *State v. Avery*, 7 Conn. 266, 270-71 (1828).  In 1864, however, the Pennsylvania Supreme Court went the other way, holding that solicitation to commit adultery is not a criminal attempt; some further act was required. *Smith v. Commonwealth*, 54 Pa. 209, 214 (1864). *Smith* interpreted *Higgins* to be a case about only criminal solicitation, not criminal attempt. *Id.* at 211.

---

[11] *See State v. Avery*, 7 Conn. 266, 270-71 (1828) (following *Higgins* in upholding attempted-adultery indictment); *State v. Carpenter*, 20 Vt. 9, 12 (1847) (upholding attempted-obstruction conviction based on solicitation of witness not to appear); *Griffin v. State*, 26 Ga. 493, 497-98 (1858) (following *Higgins* in upholding attempted-larceny conviction based on solicitation of accomplice); *State v. Murphy*, 27 N.J.L. 112, 115 (1858) ("Mere words do, at the common law, constitute such overt act as amounts to an attempt to commit a crime." (citing *Higgins*)); *Mulligan v. People*, 5 Parker 105, 112 (S. Ct. N.Y. 1861) (stating in dictum that attempted murder would be established by soliciting an accomplice).

By the time our Supreme Court decided *Hicks* in 1889, "[t]he jurisdictions [that] had confronted the question were evenly split." *United States v. Am. Airlines, Inc.*, 743 F.2d 1114, 1120 (5th Cir. 1984). Courts in eight States said that a solicitation could constitute an attempt.[12] Courts in six other States (including Virginia, after *Hicks*) "concluded that a solicitation could never be an attempt." *Id.* at 1120 n.10.[13]

The cases in the latter camp were undoubtedly influenced by Francis Wharton's then-famous criminal-law treatise. Wharton changed his mind about the correct rule between the sixth and seventh editions. In the sixth edition, published in 1870, Wharton cited *Avery* for the proposition that an indictment for attempted adultery could be supported by "solicit[ing] a woman to commit adultery." 3 Francis Wharton, *Treatise on the Criminal Law of the United States* § 2696, at 268 (6th ed. 1870). But he reversed course four years later in the seventh edition. 2 Francis Wharton, *Treatise on the Criminal Law of the United States* § 2691 (7th ed. 1874). Citing the then-recent Pennsylvania decision in *Smith*, Wharton wrote that criminal attempt could not lie for mere "advice given to another, which advice such other person is at full liberty to accept or reject." *Id.* at 850 & n."s." The other person's refusing the solicitation precluded liability for criminal attempt:

> Following such reasoning, several eminent European jurists have declined to regard any attempts or solicitations as indictable, when there is interposed between the attempt or solicitation, on the one hand, and proposed illegal act, on the other, the resisting will of another person, which other person refuses assent and cooperation.

---

[12] *See Avery*, 7 Conn. at 266; *Carpenter*, 20 Vt. at 12-13; *Griffin*, 26 Ga. at 497-98; *Murphy*, 27 N.J.L. at 115; *Mulligan*, 5 Parker at 112; *Collins v. State*, 50 Tenn. 14, 17-18 (1870); *State v. Ames*, 64 Me. 386, 388 (1875); *State v. Hayes*, 78 Mo. 307, 315-16 (1883).

[13] The court cited *Smith*, 54 Pa. at 209; *McDade v. People*, 29 Mich. 50 (1874); *Stabler v. Commonwealth*, 95 Pa. 318 (1880); *State v. Baller*, 26 W. Va. 90 (1885); *Lamb v. State*, 10 A. 208 (Md. 1887); *Cox v. People*, 82 Ill. 191 (1876); and *Hicks*, 86 Va. at 223. 743 F.2d at 1120 n.10.

*Id.* at 850.[14]  Wharton also changed his mind about *Avery*, "whose reasoning," he said, "fails to meet the objections stated above."  *Id.* at 851 n."u."[15]

Two years later, the Illinois Supreme Court cited Wharton's treatise in reversing an attempted-incest conviction, holding that solicitation could not qualify as an overt act.  *Cox v. People*, 82 Ill. 191, 192-93 (1876) (citing Wharton (7th ed.), *supra*, § 2961).  The court said that the required *act* must be "a physical act, as contradistinguished from a verbal declaration; that is, it must be a step taken towards the actual commission of the offense, and not a mere effort, by persuasion, to produce the condition of mind essential to the commission of the offense."  *Id.* at 193.  *Hicks* cited Wharton's treatise as well (though not the passage quoted above).  86 Va. at 226-27.

Although the law of criminal attempt in Virginia remains a court-made doctrine, other States have codified their criminal-attempt law, largely in response to § 5.01 of the Model Penal Code (MPC), published by the American Law Institute (ALI).  And ironically perhaps, MPC § 5.01 embraced the original rule in *Higgins* that solicitation can qualify as an overt act.

---

[14] Our Supreme Court in 1925 quoted the same passage as it appeared in Wharton's tenth edition, adding:

> Thus it has been held that solicitation to commit adultery is not indictable at common law (*Smith v. Com.*, 54 Pa. 209; *Kelly v. Com.*, 1 Grant, Cas. [Pa.] 484); and so of endeavoring to persuade incest (*Cox v. People*, 82 Ill. 191), or to sell liquor (*Com. v. Willard*, 22 Pick. [Mass.] 476).

*Wiseman v. Commonwealth*, 143 Va. 631, 638 (1925) (alterations in original) (paraphrasing 1 Francis Wharton & William Draper Lewis, *Treatise on Criminal Law* § 179, at 202 (10th ed. 1896)).

[15] Another famous treatise-writer disagreed with Wharton, writing that "[a] common form of attempt is the soliciting of another to commit a crime; the act, which is a necessary ingredient in every offence, consisting in the solicitation."  1 Joel P. Bishop, *Commentaries on the Criminal Law* § 767, at 554-55 (5th ed. 1872).

One "major result[]" of § 5.01 was "to extend the criminality of attempts" so that "the crime becomes essentially one of criminal purpose implemented by an overt act strongly corroborative of such purpose." Herbert Wechsler et al., *The Treatment of Inchoate Crimes in the Model Penal Code of the American Law Institute: Attempt, Solicitation, and Conspiracy (Part I)*, 61 Colum. L. Rev. 571, 573 (1961); MPC Part III, Art. 5 at 295 (1985) (same).[16] Thus, the overt-act requirement in MPC § 5.01 asks whether the defendant's conduct was "a substantial step in a course of conduct planned to culminate in his commission of the crime." MPC § 5.01(1)(c) (1985). Conduct constitutes a "substantial step" when "it is strongly corroborative of the actor's criminal purpose." *Id.* § 5.01(2).

The ALI observed that previous "literature and decisions" addressing the overt-act requirement "reflect ambivalence as to how far the governing criterion should focus on the *dangerousness of the actor's conduct*, measured by objective standards, and how far it should focus on the *dangerousness of the actor*, as a person manifesting a firm disposition to commit a crime." MPC § 5.01 cmt. 1 (emphases added). In many cases, the criteria will lead to the same outcome. But "[w]hen they do not, the proper focus is the actor's disposition." *Id.* MPC § 5.01 was "drafted with this in mind." *Id.*

MPC § 5.01 also includes a list of conduct that can qualify as a "substantial step" in the commission of the offense, the last example of which is soliciting an innocent agent to commit an element of the offense:

> (2) *Conduct That May Be Held Substantial Step Under Subsection (1)(c).*
>
> . . . . Without negating the sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law:

---

[16] The ALI published the approved version of the Model Penal Code in 1962 and republished it 1985 with revised comments. *See* MPC, Part I at xi to xiv (1985).

(a) lying in wait, searching for or following the contemplated victim of the crime;

(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c) reconnoitering the place contemplated for the commission of the crime;

(d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

(e) possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances;

(g) *soliciting an innocent agent to engage in conduct constituting an element of the crime*.

MPC § 5.01(2) (emphasis added). That list "corresponds with patterns found in common law cases . . . , with the requirement that the issue of guilt be submitted to the jury if one or more of them occurs and strongly corroborates the actor's criminal purpose." *Id.* expl. note. Thus, MPC § 5.01(2)(g) rejects the guidance from Wharton and *Hicks* that solicitation alone cannot qualify as an overt act.

If Virginia followed MPC § 5.01, it would have been a jury question whether Atkins's soliciting his granddaughter was a substantial step toward the consummation of incest. MPC § 5.01 focuses on "the dangerousness of the actor, as a person manifesting a firm disposition to commit a crime," MPC § 5.01 cmt. 1, and Atkins surely fits that description. But *Hicks* and *Jones* took a different path, focusing "on the dangerousness of the actor's conduct." *Id.* In *Jones*, for instance, we agreed "with Justice Oliver Wendell Holmes, Jr.'s observation that '[a]s the aim of the law is not to punish sins, but is to prevent certain external results, the act done

- 14 -

must come pretty near to accomplishing that result before the law will notice it.'" *Jones*, 70

Va. App. at 318 (quoting *Commonwealth v. Kennedy*, 48 N.E. 770, 771 (Mass. 1897)).

Without doing more than asking for sex, like removing his clothes or exposing himself,

Atkins did not "come dangerously near to success." *Id.* (quoting J.H. Beale, Jr., *Criminal*

*Attempts*, 16 Harv. L. Rev. 491, 492 (1903)). When a defendant's intent to commit the crime is

clear—as it is here—even "slight acts done in furtherance of this design" will satisfy the overt-

act requirement. *Id.* at 338 (quoting *Lee v. Commonwealth*, 144 Va. 594, 600 (1926)). But as we

clarified in *Jones*, "an overt act, 'slight' or not, must be in furtherance of the commission of the

crime itself," and not "*merely in furtherance of the criminal intent* to commit it." *Id.* at 326

(emphasis added). Apart from Atkins's solicitation—which confirmed his criminal intent but is

not an overt act under *Hicks*—Atkins engaged in no physical act to commence intercourse with

his granddaughter.

To be sure, the "great majority of the attempt statutes" adopted in other States now

include the MPC's "'substantial step' language." Wayne R. LaFave, *Substantive Criminal Law*

§ 11.4(e), at 313-14 & n.69 (3d ed. 2018) (collecting State statutes).[17] But Virginia has not

adopted that standard. Nor has our Supreme Court been asked to revisit the common-law rule it

created 136 years ago in *Hicks* that prevents solicitation from counting as an overt act for

criminal attempt. As a result, *Hicks* requires that we reverse Atkins's conviction.

---

[17] LaFave notes, however, that most of the States adopting the substantial-step approach have not set out the list in MPC § 5.01(2). *See* LaFave, *supra*, § 11.4(e), at 314 & n.73.